## UNITED STATES v. MANEY.

(District Court, E. D. Wisconsin. April 2, 1926.)

**1. Aliens ⊜68(3).**

On filing petition for naturalization, district court acquired jurisdiction, notwithstanding arrival certificate, required by Naturalization Act, § 4, subd. 2 (Comp. St. § 4352), was not filed until 20 days thereafter.

**2. Aliens ⊜68(4).**

Where district court permits amendment of naturalization petition by inclusion of arrival certificate, required by Naturalization Act, § 4, subd. 2 (Comp. St. § 4352), government must be granted right to make full investigation of merits of amended petition.

**3. Aliens ⊜68(3).**

Failure to file arrival certificate, required under Naturalization Act, § 4, subd. 2 (Comp. St. § 4352), until 20 days after filing naturalization petition, *held* procedural irregularity, curable by amendment.

At Law. Suit by the United States against Anna Marie Maney for cancellation of certificate of naturalization. Petition dismissed.

Roy L. Morse, U. S. Atty., of Milwaukee, Wis.

Bruno V. Bitker, of Milwaukee, Wis., for respondent.

GEIGER, District Judge. Under section 15 of the Naturalization Law (34 Stat. 601 [Comp. St. § 4374]) the government brings suit to cancel a certificate issued pursuant to an order or judgment of naturalization granted by this court to the respondent, Anna Marie Maney, on February 11, 1924. The facts are:

The petition for naturalization was filed November 13, 1923, and upon it, as well as upon its supporting proofs, her qualifications and right to admission are conceded, save for the following:

At the time of filing the petition she did not present nor file therewith the "arrival" certificate specified in paragraph 2, § 4, of the Naturalization Act (34 Stat. 596 [Comp. St. § 4352]), viz.:

"*At the time* of filing his petition *there shall be filed* with the clerk of the court a certificate from the Department of Labor * * * stating the date, place, and manner of his arrival in the United States, and the declaration of intention of such petitioner, *which certificate* and declaration *shall be attached to and made a part of said petition.*" (Italics supplied).

But, twenty days thereafter—that is, on December 3, 1923—such certificate was mailed to the clerk by the district director of naturalization, acting, I assume, for the Department of Labor, and, it would seem, on behalf of, or at least in the interest of, the petitioner. The clerk received the certificate and filed it, certainly in the sense of taking it into official custody in connection with the petition previously filed as the initial step of a naturalization proceeding. He did not then physically attach it to the petition. But the latter was docketed, notice thereof given as required by law, and it took its place upon the regular calendar for hearings to be had February 11, 1924. On that day the government appeared, filing a written motion, viz.:

"This day came the naturalization examiner, Mr. H. L. Roethe, and moved the court to dismiss the above-entitled petition, for the reason that the certificate of arrival was not attached to said petition at the time the petition was filed, or to have said petition marked 'Spoiled' for the same reason."

No suggestion was made that the government had been impeded in exercising its right to appear, or in its attempted examination of the merits, by any lapse either in filing or actual physical attachment of the certificate. Indeed, that possibility as one of merit would seem to have been pretty effectually foreclosed by the examiner's own act, 70 days prior to the motion, of sending the certificate to the clerk, presumably, it should now be held, *for filing and attachment, agreeably to the statute.* Then, as now, the sole merit of the mo-

tion was said to resolve itself into a question of jurisdiction, because, so it was asserted, the certificate not being filed in exact concurrence with, and not forthwith attached to, the petition at *its* filing, the court never had, and, when the motion was made, did not have, before it any person or subject-matter within its judicial power—the court could do nothing except to say that it could do nothing in the matter. Hence no amendment was possible; and, carried to its logical end, protest, or the like, on the part of the government, no matter how earnest, really is not necessary, and assent, waiver, or the like, no matter how express or how sincere, must be held unavailing to import validity or legality into the proceedings or judgment. The motion thus made was overruled.

Since the revision of the naturalization laws by Act June 29, 1906, questions respecting the mandatory character of conditions of admission of aliens, both as respects eligibility and procedure, have arisen, and occasion for consideration of these questions is often furnished in cancellation suits brought by the government under section 15. What constitutes "illegality" in granting naturalization, what constitutes a minor procedural irregularity, are frequently assumed to be identical queries, and that assumption, as in the present case, is found in the insistence that every deviation from the literalism as well as from the substance of the statute must result in "illegal" procurement of naturalization, within the doctrines of such cases as Johannessen v. U. S., 225 U. S. 227, 32 S. Ct. 613, 56 L. Ed. 1066, U. S. v. Ginsberg, 243 U. S. 472, 37 S. Ct. 422, 61 L. Ed. 853, U. S. v. Gulliksen, 244 F. 727, 157 C. C. A. 175, and here in this case particularly—U. S. v. Ness, 245 U. S. 319, 38 S. Ct. 118, 62 L. Ed. 321.

A regulation promulgated by the Department of Labor furnishes, apparently, the basis for the motion made herein, and doubtless was intended to embody a conception of the adjudicated cases referred to: "When a clerk of court executes a petition for naturalization * * * in the case of an alien who arrived after June 29, 1906, [and] fails to attach either his certificate of arrival or his declaration of intention in accordance with the terms of section 4 of the Act of June 29, 1906, *no valid petition is docketed,* and since the petitioner is only required to pay for the *docketing* of a *complete petition,* the petition *should be marked* 'Spoiled,' (italics supplied), and the fee held for the payment for a *complete petition."* See Regulations of Department of Labor, September 24, 1920.

This regulation intermingles notions of "invalidity" and "incompleteness," from which it is at once deduced that judicial power never attached, and could not be remedially invoked; that nothing could be done except to mark the executed or filed petition "Spoiled"; and the motion made in the original proceeding and the present bill both seek to give effect to the conception that the respondent, in a legal sense, could and can do nothing, except to acknowledge the futility of all attempts to obtain naturalization under the petition originally filed by her. That petition is fit for "spoliation"—nothing else.

I assume that in naturalization proceedings courts exercise judicial powers, and therein have and possess the ordinary incidents of those powers; that, on filing a petition praying for naturalization of the applicant, the court obtains jurisdiction in a true sense over the person of the applicant and over the subject-matter of his naturalization; that such jurisdiction is acquired in a like true sense, whether the applicant be eligible or ineligible, whether his petition be a model of pleading in form and in substance, or whether it be lamentably defective in either—if, in the latter case it *appear* to be a petition in or for naturalization. These considerations, it is confidently believed, are not only elemental, but, as such, have not been disturbed by any authoritative adjudication on any phase of the Naturalization Act. To prescribe, as conditions for valid naturalization, matters of substance, such as residence, character, declarations of intention, and methods (exclusive and least indispensable) of proof; to prescribe indispensable procedural steps, such as hearings in open court, the taking of prescribed oaths, is one thing. To say, however, that each is *jurisdictional* is quite another. To say that failure to heed requirement, which, by the very recognition which has been accorded to substance, makes such requirement of minor *procedural* consequence only, makes out a case of either *jurisdictional* fault or *illegality,* is also quite another thing; and it is confidently believed that admonitions respecting strict observance of the law are not intended to deny to courts power to note distinctions between major requirements and minor procedural incidents, which latter are such either under the law or become such after the major matter of substance has been complied with. Therefore, in the present case, the government urges properly that the certificate of arrival is prerequisite to a valid order, but also (1) that it must be filed in *exact occurrence* with the filing of the petition, and (2) that it must be *attached* to the petition prior to or concurrently with such filing,

and as such timely filing or attachment *prior to the hearing* could not be shown, there was no jurisdiction to proceed, and therefore the court proceeded "illegally," within the meaning of the statute, thus vitiating the order.

Let us examine the Ness Case. There applicant did not propose either to file or produce the certificate of arrival; for, as was conceded, he could not, there being no record of his entry or arrival. The trial court absolved him from the necessity of complying with the statute, and after affirmance by the Circuit Court the Supreme Court stated the question thus: "It is urged that the certificate of arrival is *merely a form of proof,* which the naturalization court has *power to dispense with* for cause. The uses served by the certificate, the history of the provision and its relation to other parts of the act, show that this contention is unsound" (italics supplied)—and the court ruled that *the filing* of the certificate is "an essential prerequisite to a *valid order of naturalization."* U. S. v. Ness, 245 U. S. 322, 38 S. Ct. 119, 62 L. Ed. 321.

Obviously the question was determined in the light of the other requirements of section 4 respecting the necessary allegations of a petition for naturalization among them: "The place from which he emigrated, and the date and place of his arrival in the United States, and, if he entered through a port, the name of the vessel on which he arrived." And, howsoever mandatory the provision was held, no suggestion seems to have been entertained respecting a want of jurisdiction; nor is the ruling other than a recognition of the statute, as prescribing the certificate as an indispensable evidentiary support for the allegation above mentioned—as an "aid" to the government in its investigation during the 90-day period before "final action." The certificate is declared to be the "natural starting point for such investigation," aiding the government, so it is declared by the court, in ascertaining (1) whether the alien petitioner was within any excluded classes under either sections 2, 38 of the Immigration Act (34 Stat. 898), or 7 of the Naturalization Act (34 Stat. 598 [Comp. St. § 4363]); (2) whether he is the identical person named in the declaration of intention; (3) whether the period of residence prescribed by the act has in fact elapsed. See page 323, 245 U. S. (38 S. Ct. 118), supra.

It would seem too plain for argument, therefore, that the requirement of a certificate of arrival, instead of being an ingredient of jurisdiction, itself—under the Ness Case—

pointed out the necessary method of proceeding further in the *exercise of power* under an *incomplete petition,* even if it be so termed. By this is meant that the court had obtained jurisdiction, that it was within its power to rule whether the petition was sufficient in its allegations as matter of fact—even though it might be obliged to rule that, unless and until the further condition of filing and attaching the certificate were fulfilled, it could not proceed in the hearing to "final action," as the statute denominates it, and make a "valid order of naturalization." That, however, is not a denial of jurisdiction over the person of the applicant nor of the subject-matter. Saying that is not affirming nullity of everything which preceded the test of completeness. Nor is it an affirmance of the invalidity of the petition, as the departmental regulation characterizes it, *for jurisdictional purposes.* The government's present contention on this jurisdictional phrase goes so far that, as indicated, waiver, amendment, protest, or the like, are all unavailing. Protest, if it avail, merely saves time; nothing is lost to the government. The attack may subsequently be made, either under section 15, upon the claim that, jurisdiction being lacking, "illegality" resulted, or, if it chooses, the attack may be made collaterally as in a prosecution for use, of the invalid certificate under sections 18 or 19, of the act (Naturalization Act, 34 Stat. 602 [Comp. St. §§ 4375, 10245]). And, as further illustrative of the extremity to which the contention leads, the petition here in question, no matter how willfully and corruptly false every allegation therein, including that dealing with "arrival," might be, perjury could not be assigned thereon. The failure to attach the telltale certificate supports the defense of want of "jurisdiction" on the part of the tribunal.

[1] Therefore the contention that the court never had jurisdiction of the respondent's application for naturalization is rejected, and the case is narrowed to the inquiry whether, in the exercise of jurisdiction, and after the compliance with the statute by filing and attaching, or offering to attach, the arrival certificate, the court proceeded "illegally" to naturalize her. Plainly, as has been observed, the Ness Case dealt with the statute as prescribing an indispensable *evidentiary* item— to be "filed" and "attached." In rejecting the contention, the view is necessarily entertained that, if the court cannot proceed to final action without the certificate, it can and it must impose upon the applicant the discharge of the statutory duty as a condition of fur-

ther proceeding; and this by necessary implication involves granting, by amendment, the privilege in the very proceeding—to produce and file it. Desirable as it may be to have certificates filed and attached at the time of filing the petition, the object of the statute is to aid in an *evidentiary* way, and it would be absurd to say that the allegation of the petition and the presence of an indispensable item of evidence must concur and must be physically attached—that the *evidence* determines the *jurisdiction*.

Delinquencies respecting the arrival certificate may arise thus: (1) The certificate may not be filed with nor attached to the petition when the latter is filed. (2) The certificate may be filed with but not attached to the petition when it is filed. And, if it be of the first sort, the certificate may be offered and filed thereafter, but there still may be delinquency in failure to attach it; and, if it be of the second, and in any event, the failure to *attach* may be *chargeable* either to the applicant or to the filing officer.

[2] In these situations the court's power may be exercised (1) to dismiss the petition because of the defect; (2) to hold the proceeding to permit the defect to be cured. Concededly the latter course, if pursued, should always consistently preserve to the government, when it appears and demands it, the right to make full investigation of the merit of the *amended* petition. That sort of reservation is always incident to the exercise of the power to permit amendment. In this view of the matter, it is difficult to conceive of any reason for denying jurisdiction, or denying the power to amend an incomplete petition for naturalization. Questions respecting limits of that power have brought conflict of view, one of them dealing with amendment of a declaration of intention, always a part of a petition. See In re Friedl (D. C.) 202 F. 302; In re Denny (D. C.) 240 F. 845. In the former case the view was expressed that, though the declaration was a part of the petition, its purpose, like that of the certificate of arrival here, was not only evidentiary, but, in its *creation* as a step prescribed by statute antecedent to a judicial proceeding, it could not rest in parol, nor could it be made the subject of nunc pro tunc revision or amendment. I likewise believe that in the present case, if the certificate of arrival or the original registry of entry were incorrect, or, as in the Ness Case, nonexistent, its amendment or parol creation could not come within the scope of judicial power in the naturalization proceedings.

To amend a judicial proceeding in accord with existing facts is a far different matter from amending proofs of evidence of steps directed by statute for creating a right. The declaration, its making, its particular elements, the *time* and *place* of its making, are ingredients of the naturalization right, and inherently must be perfected prior to judicial establishment of the naturalization status. If the law, instead of prescribing particular antecedent steps and methods of proving them, left the entire question of naturalization for determination by the court upon any pertinent proof available in the judicial proceeding, I would quite agree with Judge Hand's contrary view upon this narrow phase of the amendability of a declaration of intention. In re Denny, supra. But specific provisions in a statute respecting substantive elements and methods of evidencing them, so it seems to me, must have recognition of indispensability in establishment of the right and in many instances exclusiveness in *form* of proof. Yet, consistently with this, I am confident that, jurisdiction being present, there is as much latitude in these proceedings in dealing with subordinate matters, either of substance or procedure, as there is in nearly all statutory proceedings to establish purely statutory rights. Every judge of courts exercising naturalization powers, no matter how thoroughly impressed with the necessity of strict adherence to the provisions of the law, can testify to the liberality with which amendments to petitions to enable compliance with section 4 have been allowed. And it is true that usually the request is made by the government.

All this, as I believe, has proceeded obediently to the spirit voiced by Judge Hand in the case referred to supra: "* * * Unless there be some particular jurisdictional reason, every reasonable motive should allow the relief, which would be allowed at the present day in every other form of legal proceeding, so far as I know. No one wants gratuitously to impose upon naturalization proceedings that technical spirit which easily follows a literal application of so detailed a statute, and which results in vexatious disappointment, and in needless irritation, to a defenseless class of persons necessarily left to the guidance of officials, except in so far as the courts may mitigate the rigors of their interpretation. The decisions * * * have therefore all depended upon the supposed jurisdictional nature of the requirement."

And of a possible choice between formalities and indispensable prerequisites he adds:

"What part of these prescribed preliminary formalities shall be taken as jurisdictional, and what as regulative, is entirely a fluid matter, depending upon the importance ascribed to any one of them by the court. .It is possible to treat literal compliance with every particular provision as an absolute condition sine qua non of any hearing, but such a meticulous temper does not suit a court. · There is, indeed, no difference in the formal expression of the statute regarding any one of them which can serve as a distinction."

[3] Full respect may therefore be given to the Ness and other cases referred to, and at the same time deny that they exclude all discretionary power on the part of naturalization courts to recognize and relieve against minor defaults or irregularities. This does not mean that such courts should countenance as legitimate normal practice or procedure the ignoring of express regulations prescribed by the statute; but it does mean that procedural incidents need not always be given that dignity which plainly attaches to substantive requirements. Therefore, as has been intimated, a regulation requiring the filing of the certificate of landing and its attachment to the petition for naturalization prima facie should be complied with. That is because, as indicated in the Ness Case, the certificate has a substantial function, and is a prerequisite to a valid order of naturalization. When, however, there has been a default in meeting merely the regulation respecting time of filing such requirement, neither the Ness Case nor any other authority, nor suggestion, except that of a "meticulous temper," can be urged to stand in the way of plain furtherance of justice through remedial amendment. It becomes quite immaterial whether proceeding without the certificate to final action be characterized as "illegality" or "loss of jurisdiction." The dominant purpose is, and always should be, to proceed in substantial accord with the law.

It approaches the ludicrous to say, as the government must in this case, that a failure to file and attach the certificate *at the time of filing the petition* should now be regarded as a substantial lapse, even though the government representative filed the certificate 20 days later, even though the certificate was before the court at the time of the hearing, and though the government then made not the slightest suggestion of its inability, by reason of the slight lapse, to get the benefit which, under the Ness Case, is ascribed to the certificate. If on November 13th the Court did not acquire, and on December 3d had no jurisdiction of the re-

spondent or the subject-matter of her naturalization, it is difficult to imagine a reason for sending the certificate of arrival to the clerk, by the government functionary who is under duty to insist upon its filing. This is of some importance in determining whether anything *of substance* remained undone at the time of hearing. A reading of the Ness Case suggests persuasively that just such situations were in the mind of the court—in their relationship to matters of substance and of merit —when it was observed: "Opposition to the granting of a petition for naturalization may prevail [under section 11 (Comp. St. § 4370)], because of objections to the competency or weight of evidence or the credibility of witnesses, *or mere irregularities in procedure*. A decision on such minor questions, at least of a state court of naturalization, is, though clearly erroneous, conclusive, even as against the United States, if it entered an appearance under section 11."

I assume that the statute gives the federal District Court the same power of passing on such matters as is here conceded to the state courts, for it would be absurd to endow the former with power to make a binding ruling upon such matters, and thereby withdraw from the situation the possibility of attack under section 15, but to reserve to the government the right to appear in the federal courts, and, instead of being bound by a decision therein on minor procedural matters, to have liberty to proceed under section 15 with the confidence of proving "illegality."

What of *substance* was omitted or left undone on the final hearing; what, as an ingredient of the naturalization right, was lacking prior to and upon "final action"; what could have been, or in the future can be, introduced that would add to or supplement the hearing, or that would bring anything into the order of naturalization not now embodied therein? These queries, being susceptible of negative answer only, demonstrate the want of merit in the government's contentions, excepting, possibly, such as may be found in recrudescently investing naturalization courts with that primordial rigor of procedure enjoyed in courts of justices of the peace. The views thus expressed are carried into these conclusions:

First. That the court acquired jurisdiction in a true sense over the person of the respondent herein, and over the subject-matter of her naturalization, upon the filing of her petition November 13, 1923.

Second. That such petition, though incomplete and deficient, in not having filed

therewith and attached thereto the certificate of arrival, was subject to amendment by ordering the certificate tendered on December 3, 1923, to be treated as filed and attached to the petition prior to the actual hearing of her application, and the granting of an order of naturalization.

Third. That upon the facts of this case the failure to file and attach the certificate concurrently with the filing of the petition became, and at the time of the hearing of said petition was, a minor procedural irregularity, curable by amendment binding on the government, especially unless and until the government made a claim of surprise, or of inability, by reason of the failure to present and attach the certificate in exact timely concurrence with the filing of the petition, to investigate the merit of the application. Therefore neither the amendment nor the ensuing order of naturalization was or is "illegal."

Fourth. That the government's case is lacking in proof of want of jurisdiction, or of illegality. Wherefore its petition should be dismissed.