## UNITED STATES v. MANEY.

Circuit Court of Appeals, Seventh Circuit, June 16, 1927.

Rehearing Denied September 22, 1927.

No. 3778.

1. Aliens 68(1)—Constitutional law 92—Aliens have no vested right to citizenship, or right to proceed to become citizens, except under statute.

Aliens have no vested right to citizenship, and none at all to prosecute desire to become citizens, except as provided in statute.

2. Aliens 68(3)—Statute requiring certificate of arrival to be filed at time of filing petition for naturalization held mandatory (Naturalization Act, § 4, par. 2 [Comp. St. § 4352]).

Requirement of Naturalization Act, § 4, par. 2 (Comp. St. § 4352), for certificate of arrival to be filed by alien at time of filing petition for naturalization, is mandatory, and certificate cannot be filed at any other time and manner than as provided therein.

3. Aliens 68(3)—Failure to file certificate of arrival with petition for naturalization requires cancellation of naturalization certificate (Naturalization Act, § 4, par. 2 [Comp. St. § 4352]).

Certificate of citizenship issued to alien in naturalization proceeding, is null, and must be canceled, where it is shown that certificate of arrival was not filed with petition for naturalization, as required by Naturalization Act, § 4, par. 2 (Comp. St. § 4352).

Alschuler, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Wisconsin; Ferdinand A. Geiger, Judge.

Suit by the United States against Anna Marie Maney to cancel a certificate of citizenship. From a decree of dismissal (13 F.[2d] 662), plaintiff appeals. Decree vacated, with directions.

Fred J. Schlotfeldt, of Chicago, Ill., for the United States.

Bruno V. Bitker, of Milwaukee, Wis., for appellee.

Before ALSCHULER, EVAN A. EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. This is an appeal from an order dismissing a petition, filed under section 15 of the Naturalization Act (Comp. St. § 4374) to cancel a certificate of citizenship issued to appellee. The question here is: Did the court have the power to permit appellee to supply, at a later date, a certificate of arrival not filed with the petition as required by section 4, paragraph second, of the Naturalization Act of June 29, 1906 (34 Stat. p. 596 [Comp. St. § 4352])?

[1] Aliens have no vested right to citizenship, and none at all to prosecute their desire to become citizens except as provided in the statute. U. S. v. Ginsberg, 243 U. S. 472, 37 S. Ct. 422, 61 L. Ed. 853. The contention of appellee, in substance, is that the required certificate need not be filed at the time and in the manner provided in section 4, but that it may be filed then, or at any other time, within the discretion of the court.

When the act of 1906 was planned, the Congress had the background of the experi-

ence of the nation and the courts under a naturalization law that was then more than 100 years old. There does not seem to be any exact rule by which it can be determined whether a statute is mandatory or merely directory. In French v. Edwards, 13 Wall. (80 U. S.) 506, 511 (20 L. Ed. 702), the Supreme Court, considering the question as to what statutes are directory, and what mandatory, said:

"There are undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such generally are regulations designed to secure order, system, and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise."

It would appear that those statutory provisions which pertain merely to the administration of the law, so as to regulate and dispatch the business in hand, are directory merely, but that those statutory provisions which are made for the protection of the rights of parties, which may be injured, if the provisions are not strictly pursued, must be regarded as mandatory. And it seems to follow necessarily, from what is said by the court, that even provisions which are usually considered directory become mandatory, if "accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated."

In U. S. v. Ginsberg, 243 U. S. 472, 473, 37 S. Ct. 422, 424 (61 L. Ed. 853), is disclosed a part of the background that confronted Congress when it undertook to fix a "uniform system and a code of procedure in naturalization matters," which it did when the law, of which the section in question is a part, was passed. Speaking of the new law, the court said:

"This specifies with circumstantiality the manner 'and not otherwise' in which an alien may be admitted to become a citizen of the United States; what his preliminary declaration shall be; form and contents of his sworn petition to the court, and witnesses by which it must be verified; form of oath to be taken in open court; necessary proof concerning residence, character, etc. The clerk is required to post notice of the petition, with details concerning applicant, when final hearing will take place, names of witnesses by which alleged facts are to be established, etc."

This language seems to say that the form and contents of the alien's sworn petition to the court, and the manner of its preparation, filing, and presentation, shall be in exact accordance with the provisions of the act, and not otherwise, before there is any power in the court to act upon it. One of the seemingly strong reasons for the present act is, as stated by the court in the Ginsberg Case, that, because of the generality of provisions of the old act, many abuses had arisen under it, which it was desired to prevent in the future.

In U. S. v. Ness, 245 U. S. 319, 323, 38 S. Ct. 118, 120 (62 L. Ed. 321), the Supreme Court pointed out the important reasons for the provisions of the act requiring the filing of the certificate of arrival. Whether an alien applicant is one who must be excluded under the provisions of the statute because of his political beliefs, or whether he has been here the requisite time, or whether there is identity between him and the record which he claims is his own, are all matters of the utmost importance. The Supreme Court said in U. S. v. Ness, supra:

"Section 6 [Comp. St. § 4354] prohibits courts from taking final action upon any petition until 90 days after such notice" (provided in section 5 [Comp. St. § 4353]) "has been given. That period is provided, so that the examiners of the Bureau of Naturalization and others may have opportunity for adequately investigating whether reasons exist for denial of the petition."

While the court does not say that the failure to file the certificate at the time applicant's petition is filed is fatal, it does say that, the filing of the certificate of arrival "being a matter of substance, it is clear that no power is vested in the naturalization court to dispense with it." The opinion further points out:

"Experience and investigation had taught that the widespread frauds in naturalization, which led to the passage of the Act of June 29, 1906, were, in large measure, due to the great diversities in local practice, the care-

lessness of those charged with duties in this connection, and the prevalence of perjured testimony in cases of this character. A 'uniform rule of naturalization,' embodied in a simple and comprehensive code, under federal supervision, was believed to be the only effective remedy for then existing abuses. And, in view of the large number of courts to which naturalization of aliens was intrusted and the multitude of applicants, uniformity and strict enforcement of the law could not be attained, unless the code prescribed also the exact character of proof to be adduced."

The court distinctly recognized the importance of the regulation issued by the Secretary of Labor, pursuant to the act, saying: "The clerk of the court is advised that he 'should not commence the execution of the petition until he had received the certificate of arrival.'" This interpretation by the Supreme Court seems clearly to indicate that the act should be followed literally by the courts. We see no good reason why it should not be strictly followed.

[2, 3] The provisions of section 4 of the act, while consisting of considerable detail, are quite clear and in no way complicated. By paragraph second thereof the alien is given the right:

"Not less than two years nor more than seven years after he has made such declaration of intention he shall make and file, in duplicate, a petition in writing, signed by the applicant in his own handwriting and duly verified, in which petition such applicant shall state his full name, his place of residence, * * * his occupation, and, if possible, the date and place of his birth; the place from which he emigrated, and the date and place of his arrival in the United States, and, if he entered through a port, the name of the vessel on which he arrived; the time when and the place and name of the court where he declared his intention to become a citizen of the United States. * * * The petition shall also be verified by the affidavits of at least two credible witnesses, who are citizens," etc. "At the time of filing his petition there shall be filed with the clerk of the court a certificate from the Department of Labor, if the petitioner arrives in the United States after the passage of this act, stating the date, place, and manner of his arrival in the United States, and the declaration of intention of such petitioner, which certificate and declaration shall be attached to and made a part of said petition."

In addition, the government has provided blank petitions for use by applicants. Whether such a blank was used in this case does not appear, but, if so, the applicant was challenged with the fact that a certificate should be furnished, by the following language in his affidavit: "Attached hereto and made a part of this petition are my declaration of intention to become a citizen of the United States and the certificate from the Department of Labor required by law." Unless the applicant waits, before filing his petition, practically the whole five years allowed him in which to file it, no consequence greater than a little delay and a small expense will follow a dismissal of his petition.

We are of opinion that the whole logic of the situation requires that the provision of the statute in question should be construed to be mandatory. One of the provisions of the act (section 9 [Comp. St. § 4368]) is "that every final hearing upon such petition shall be had in open court before a judge or judges thereof," etc.

In the Ginsberg Case, supra, the Supreme Court held: "Section 9 requires a final hearing upon the petition in *open court*. The term 'open court' is used in contradistinction to a judge sitting in chambers. Bouvier's Law Dictionary. The whole statute indicates a studied purpose to prevent well-known abuses by means of publicity throughout the entire proceedings. Its plain language repels the idea that any part of a final hearing may take place in chambers, whether adjoining the courtroom or elsewhere."

Paragraph second of section 4 provides *when* the certificate shall be filed. Section 9 provides *where* the hearing shall be had. It does not seem that there should be any more importance attached to the "when" the petition shall be filed than the "where" the hearing is to be had. Each provision is for the purpose of preventing a possible wrong, and the fact that in neither case can it be shown that a wrong has followed the disregard of the provision is aside from the question. The stringent provisions of the act are intended to prevent in advance any recurrence of those abuses that arose before the act, because of the too liberal exercise of discretion on the part of the courts administering the law. We are of opinion that there was no discretion to permit a departure from one of the simple, but important, provisions of the act, and that the naturalization certificate in this case was illegally obtained.

The decree of the District Court, dismissing the petition, is vacated, and the District Court is directed to make an order canceling

the certificate of citizenship issued to appellee, and send a certified copy of such order to the Bureau of Naturalization, as required by law.

ALSCHULER, Circuit Judge (dissenting). The principle declared in the opinion is far-reaching. Its general application would subject to such collateral attack every naturalization certificate granted since the act was adopted, however in good faith granted and received, where it is shown there was in the proceedings any departure from formal procedural statutory provisions, however trivial and inconsequential, and which by no possibility did or could affect the merits.

That the sovereign has the undoubted power to prescribe terms, reasonable or unreasonable, upon which alone citizenship may be granted, must be conceded. But does it follow that in a naturalization proceeding the power of the court respecting procedural matters is more circumscribed than it is in all other judicial proceedings? To my mind, the court hearing a petition for naturalization is still a court, with all the powers which inhere in courts, among which is the power, in a proper case, if in furtherance of justice, to make such orders as were here made by the District Court, permitting to be filed and attached to the petition nunc pro tunc, the certificate of arrival.

A definite purpose may be gathered from the statutory requirement that there be present a certificate of arrival. Without lawful entry there can be no lawful naturalization, and the statute makes the certificate of arrival the evidence of the alien's lawful entry, and that its presence is indispensable was decided in United States v. Ness, 245 U. S. 319, 38 S. Ct. 118, 62 L. Ed. 321, which case, though here much relied upon by the government and in the opinion, does not, in my judgment, determine the issue. In the proceeding there no certificate of entry whatever was present, while here the certificate was sent for and obtained by the government officials a few days after the petition was filed, and was before the court on the hearing of the petition—a very different situation.

It is manifest from the statute, and the departmental rules and regulations made pursuant to it, that the alien is not expected to employ counsel to pilot him through the maze of statutory requirements and forms, departmental rules, and court proceedings. On the contrary, it is contemplated and required that the naturalization officers and the clerk extend their assistance to the alien in the preparation and presentation of the necessary papers. The regulations provide for furnishing the necessary blanks by the government, and for use only of such. They prescribe a preliminary form, which the alien is expected to fill out, to supply the government officials with facts necessary in the proper preparation of the petition, although the statute does not require such preliminary form.

The statute says the certificate of arrival shall be attached to the petition. Surely it cannot mean that mere want of physical attachment, although specified in the statute, would render unlawful a grant of naturalization where only the physical attachment had been overlooked. But the omission to have the certificate present at the particular time of the filing of the petition, when shortly thereafter supplied, is, to my mind, not less trivial or inconsequential than the want of attachment at precise time of filing.

The only object of supplying the certificate of arrival is to indicate that there is lawful record of applicant's lawful entry. With the making or keeping of this record the applicant has nothing whatever to do, save to supply to the proper officials, at time of arrival, the facts upon which the record is made. The record itself is made and kept by the government, and the certificate of arrival made by government officials in custody of the record, from the facts there shown and puts in convenient form, for use of the court on the hearing, nothing within the knowledge of the alien, but only such information or evidence as the government all along possessed.

If it be claimed that the attachment and presentation of the certificate is for the purpose of giving to the naturalization officials opportunity to investigate for the full intervening 90 days required between filing and hearing the petition, it may well be replied that the petition, as well as the declaration of intention filed with it, both indicate whence, where, when, and how the applicant arrived, from which naturalization officials could, and, as is their general practice, did, send for and procure the certificate of arrival. If question arose about the certificate, or the identity of the applicant with the person described in it, the court would, on the government's suggestion, grant time for further investigation, and refusal to do so might, as once stated by this court, be an improper exercise of discretion. United States v. Doyle (C. C. A.) 179 F. 687.

It does not here appear whether or not there was a preliminary form or application, or why the certificate of arrival was not re-

quired to be present and attached at the filing of the petition. It is apparent, however, that it was through no fault of the alien, but that through some unexplained inadvertence on the part of the clerk the petition was permitted to be filed without presence and attachment of this certificate. No possible harm or disadvantage to the government could or did accrue, and none is suggested, and to my mind it is entirely improper to say that, because alone of the fact that at the particular time of filing the petition the certificate of arrival was not present and physically attached to it, the court, with the certificate present and attached at time of hearing, was without jurisdiction to proceed, and the grant of naturalization unlawful. See Judge Geiger's opinion. (D. C.) 13 F.(2d) 662.

The identical ground upon which this cancellation is sought was raised and adjudicated in the District Court in the naturalization proceedings. The certificate of arrival was present, but the government objected to the grant of the petition, for the specific reason that the certificate of arrival had not been presented with and attached to the petition when filed. The court allowed its filing and attachment nunc pro tunc as of date of petition, and granted the petition against government's objection, from which judgment either party had undoubted right of appellate review. Tutun v. United States, 270 U. S. 568, 46 S. Ct. 425, 70 L. Ed. 738. The court there stated that the remedy to cancel, "afforded to the government by section 15, is narrower in scope than the review commonly afforded by appellate courts."

In the recent case of United States v. Pandit, 15 F.(2d) 285, there was involved a suit by the government to cancel Pandit's certificate of naturalization on the ground that he was a Hindu of full Indian blood, and therefore not entitled to citizenship, as was definitely held by the Supreme Court in United States v. Thind, 261 U. S. 204, 43 S. Ct. 338, 67 L. Ed. 616. It appears that in the naturalization proceedings the government challenged Pandit's right to citizenship on that ground, but the District Court found he was a "free white person" and admitted him to citizenship. The Ninth Circuit Court of Appeals, sustaining the action of the court below in dismissing the petition for cancellation, said: "The right to citizenship having been distinctly put in issue, the United States appearing and contesting, and the issue directly determined by a court of competent jurisdiction, the judgment, not having been modified or reversed, cannot now be disputed." Denial of certiorari by the Supreme Court attaches to this very important decision whatever, if any, added weight or authority such denial may import.

If the proper principle was applied in the Pandit cancellation proceedings, where the petitioner for naturalization was of a class not entitled to citizenship, surely it should apply where the asserted ground for cancellation is not one of substance, but of procedure only, involving a manifestly harmless inadvertent omission by some one on behalf of the government charged with the duty of assisting the alien to make proper preparation and presentation of his petition. To my mind, not only had the District Court full jurisdiction of the subject-matter and of the parties, with power and discretion to make the orders it did, but, having adjudicated the very question, and no fraud or jurisdictional statutory transgression appearing, its judgment is not assailable by a suit to cancel.