## COMMISSIONER OF INTERNAL REVENUE v. HIND.

### No. 6239.

Circuit Court of Appeals, Ninth Circuit.

Oct. 13, 1931.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and John H. McEvers, Sp. Assts. to Atty Gen. (C. M. Charest, Gen. Counsel, and Stanley Suydam, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

Herbert W. Clark and Leon de Fremery, both of San Francisco, Cal., for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

SAWTELLE, Circuit Judge.

This is an appeal from an order entered by the Board of Tax Appeals November 13, 1929. 18 B. T. A. 96.

Hind, Rolph & Co. was a partnership doing business in San Francisco, Cal. On April 1, 1918, it filed its income tax return for 1917, and on July 20, 1918, the Commissioner of Internal Revenue assessed a tax thereon of $23,794.48. This tax was paid. In December, 1921, the Commissioner assessed an additional tax of $199,611.29, notice of which was given and payment demanded on January 14, 1922. Thereupon claim in abatement was filed.

On February 25, 1926, a waiver extending the time for collection to December 31, 1926, was executed for and on behalf of the tax-

payer. It was received and filed in the collector's office, but was never signed by the Commissioner.

On June 11, 1926, the claim in abatement was rejected, and on August 9, 1926, appeal was taken to the Board of Tax Appeals.

On December 8, 1926, the taxpayer and the Commissioner executed an additional waiver providing that the tax of $199,611.29 "may be collected (together with such interest, penalties, or other additions as provided for by law) from said party of the first part by distraint or by a proceeding in court begun at any time prior to December 31, 1927."

█ It is conceded that the second waiver depended for its validity upon the validity of the waiver signed February 25, 1926, and this appeal hinges upon the question of law as to whether the first waiver was valid without the signature of the Commissioner.

Section 250 (d) of the Revenue Act of 1921, c. 136, 42 Stat. 227, 264, provides: "The amount of income, excess-profits, or war-profits taxes due under any return made under this Act for the taxable year 1921 or succeeding taxable years shall be determined and assessed by the Commissioner within four years after the return was filed, and the amount of any such taxes due under any return made under this Act for prior taxable years or under prior income, excess-profits, or war-profits tax Acts * * * shall be determined and assessed within five years after the return was filed, unless *both* the Commissioner *and* the taxpayer *consent in writing to a later determination,* assessment, and collection of the tax. * * *" (Italics our own.)

Interpretation of this statute leads us into an inquiry into the nature and the legal implications of a "waiver." Sedgwick, in his treatise on The Interpretation and Construction of Statutory and Constitutional Law (2d Ed.) p. 87, says: " * * * The party is held at liberty to waive statutory provisions, which, if insisted on, would enure to his benefit; and generally it is true that where no principle of public policy is violated, parties are at liberty to forego the protection of the law * * * 'A party may always waive a right in his favor, created by statute, the same as any other.' [Cases cited.] * * * So, on the same principle, if statutory requisitions in regard to process are disregarded, which would render all subsequent proceedings fatally defective; still, if the party waive the objection, by appearing and contesting the suit on the merits, a valid judgment may be rendered. [Cases cited.] But the waiver can only be made by the party in interest."

The context in the above excerpt clearly indicates that "the party in interest" is the party enjoying "the protection of the law" which he is willing to waive.

Again, in Endlich's Interpretation of Statutes, p. 632, we find the following language: "Every one has a right to waive, and to agree to waive the advantage of a law or rule made solely for the benefit and protection of the individual, in his private capacity [citing cases], and which may be dispensed with without infringing on any public right or public policy. * * * Thus a person may agree to waive the benefit of the Statute of Limitations. * * *" (Cases cited.)

Both these eminent text-writers indicate the *unilateral* nature of a waiver. This view has also been repeatedly expressed by the Supreme Court, in connection with the precise type of waiver involved in the instant case.

In Florsheim Brothers Drygoods Co., Ltd., v. United States, 280 U. S. 453, 466, 467, 50 S. Ct. 215, 219, 74 L. Ed. 542, it is said:

"The waivers executed by the parties were not contracts binding the Commissioner not to make the assessments and collections after the periods specified. * * * The instruments were nothing more than what they were termed on their face—waivers; *and that was all to which the Commissioner was authorized to consent.*

"Stress is laid on the use of the words 'agree' and 'agreement' in the acts and regulations. But these are ordinary words having no technical significance. It is also urged that, unless a contract was intended, there is no reason why the consent of the Commissioner should have been required. But an otherwise plain meaning should not be distorted merely for the sake of finding a purpose for this administrative requirement. If a reason must be found, it exists in the general desirability of the requirement as an administrative matter. It serves to keep the Commissioner in closer touch with the matters which he is charged to administer. It avoids claims of improvident execution of waivers and unauthorized exactions by subordinates of the Department for the purpose of curing their own delinquencies. And it provides a formal procedure which is generally desirable for the Commissioner, collectors, and subordinates in the Department."

In an even more recent case, Stange v. United States, 282 U. S. 270, 276, 51 S. Ct. 145, 147, 75 L. Ed. 335, this doctrine is re-enunciated: "As pointed out in Florsheim Bros., etc., v. United States, 280 U. S. 453, 466, 50 S. Ct. 215, 74 L. Ed. 542, a waiver is not a contract, and the provision requiring the commissioner's signature was inserted for purely administrative purposes and not to convert into a contract *what is essentially a voluntary, unilateral waiver* of a defense by a taxpayer."

Again, in Aiken v. Burnet, 282 U. S. 277, 281, 51 S. Ct. 148, 149, 75 L. Ed. 339, we find the following language: "Even after the Act of 1921, a so-called waiver was not a contract. The requirement in section 250 (d) of that act * * * was inserted to meet exigencies of administration, and not as a grant of authority to contract for waivers."

Finally, the "administrative" nature of the Commissioner's signature is once more adverted to in Burnet v. Railway Equipment Co., 282 U. S. 295, 298, 51 S. Ct. 137, 138, 75 L. Ed. 349: "As we said in Stange v. United States, decided this day, 282 U. S., p. 270, 51 S. Ct. 145, 75 L. Ed. 335, the Commissioner's signature was required purely for administrative purposes."

Examining the meaning of "unilateral," we find that one of its essential elements is "binding on one party but not on the other." Words and Phrases, Third Series, vol. 7, page 722. That being the case, the Commissioner's signature was not indispensable to the waiver, since the Commissioner was not thereby waiving any right.

In Endlich's text, supra, there is copious treatment of the subject of "Matters of Procedure by Public Officers"; i. e., the "administrative" matters referred to in the Supreme Court opinion quoted above: "In general, statutes directing the mode of proceeding by public officers are deemed advisory, and strict compliance with their detailed provision is not indispensable to the validity of the proceedings themselves, unless a contrary intention can be clearly gathered from the statute, construed in the light of other rules of interpretation. Thus an act *requiring* that the minutes be signed by the judges of the superior and inferior courts; that the lists of voters shall be signed by the officers who prepared them; that a surrogate shall take from the person to whom he grants letters of administration a bond with two or more sureties; that a clergyman marrying a minor shall require a certificate of his or her parents' or guardian's consent, and that all marriages shall be solemnized by the contracting parties taking each other for husband and wife before twelve sufficient witnesses, that a certificate of marriage be registered, etc., have all been held to be merely directory." Pages 621, 622. (Italics our own.)

Again: "In such case, they are said not to be of the essence, of the substance of the thing *required*, and depending upon this quality of not being the essence or subject of the thing *required*, compliance being rather a matter of convenience, and the direction being given with a view simply to proper, orderly and prompt conduct of business, they seem to be generally understood as mere instructions for the guidance and government of those on whom the duty is imposed, or, in other words, as directory only. The neglect of them may be penal, but it does not affect the validity of the acts done in disregard of them." Pages 618, 619. (Italics our own.)

Surely the examples given in the above excerpts are stronger than the Commissioner's signature to a "unilateral" waiver! In the quotations, supra, we have italicized the verb "require," because the respondent, in his brief, stresses the "requirement" of the statute under discussion.

If further authority is needed for the interpretation of the "requirement" of the Commissioner's signature as being merely directory or advisory, we quote from Lewis' Sutherland, Statutory Construction, vol. 2, p. 1137 (2d Ed.): "But many regulations are made by statute, designed for the information of assessors and officers, and intended to promote method, system and uniformity in the modes of proceeding, *the compliance or non-compliance* which does in no respect *affect the rights of tax-paying citizens.* These may be considered as directory; officers may be liable to animadversion, perhaps, to punishment, *but yet their observance is not a condition precedent to the validity of the tax.*"

Federal courts have steadfastly maintained this view:

" * * * Those statutory provisions which pertain merely to the administration of the law, so as to regulate and dispatch the business in hand, are directory merely, but that those statutory provisions which are made for the protection of the rights of parties, which may be injured, if the provisions are not strictly pursued, must be regarded as mandatory." United States v. Maney, 21 F. (2d) 28, 29 (C. C. A. 7).

"There are undoubtedly many statutory requisitions intended for the guide of officers

in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such generally are regulations designed to secure order, system, and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise." French v. Edwards, 13 Wall. 506, 511, 20 L. Ed. 702, cited in United States v. Maney, supra.

The provisions concerning waivers in the various tax acts are not inserted for the benefit or protection of the taxpayer. Florsheim Bros. Drygoods Co. v. United States, supra. The provision is one for convenience only, and the Supreme Court has said: "The protection of the convenience only of a taxpayer is not of such a vital nature as to authorize a court to treat a statute primarily directed to public officers for their guidance [i. e. for 'purely administrative purposes'], and the substantial protection of the government, as mandatory, and to consider official acts not in strict conformity with the statute as void. The protection must be substantial, and must be intended as a guard of rights or property. * * *" Erhardt v. Schroeder, 155 U. S. 124, 129, 130, 15 S. Ct. 45, 47, 39 L. Ed. 94.

There was no such protection here, no substantial rights of the taxpayer that would have been better safeguarded by the signature of the Commissioner; and it seems that, since the provision relative to the Commissioner's signature, as held by the Supreme Court, was for "purely administrative purposes," his failure to sign the waiver of February 25, 1926, did not render such waiver invalid.

█ If the waiver is valid, it will become necessary to consider the case on its merits. But an examination of the opinion of the Board of Tax Appeals discloses that it "omitted from [its] findings many of the facts relating solely to the question of the correctness of the Commissioner's computation." As was said by the late Judge Dietrich, of this court, "questions of fact are exclusively for the Board, except that we may consider whether its findings are supported by any substantial evidence." Royal Packing Co. v. Commissioner (C. C. A.) 22 F.(2d) 536, 538. See, also, Avery v. Commissioner (C. C. A.) 22 F.(2d) 6, 7, 55 A. L. R. 1277.

Accordingly, since the Board avowedly regarded "the statute of limitations question" as "determinative of the issue," it will be necessary to remand this case for complete findings of facts and a decision on the merits. It is so ordered.