## HIND v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7032.

Circuit Court of Appeals, Ninth Circuit.
Aug. 5, 1932.

Herbert W. Clark, of San Francisco, Cal., and Alfred L. Castle, of Honolulu, T. H. (Boice Gross, of San Francisco, Cal., of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and John MacC. Hudson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and DeWitt M. Evans, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

This is a petition to review the action of the Board of Tax Appeals fixing the tax to be paid by the petitioner. This is the second appeal. On the first appeal the decision of the Board of Tax Appeals was reversed on the statute of limitations [52 F.(2d) 1075]. This court remanded the case to the Board of Tax Appeals for further consideration of the question of petitioner's tax liability for the year 1917. The amount of the tax was fixed under the provisions of the Revenue Act of 1917. Primarily the appeal turns upon the question of whether or not the partnership composed of Hind, Rolph & Co. had any "invested capital" within the meaning of that term as defined by section 207 of the Revenue Act of 1917, 40 Stat. 300, 306. The Board of Tax Appeals held that the copartnership had invested capital and fixed the tax accordingly. The Revenue Act of 1917, c. 63, 40 Stat. 300, 306, defines "invested capital" as follows:

"Sec. 207. That as used in this title, the term 'invested capital' for any year means the average invested capital for the year, as defined and limited in this title, averaged monthly.

"As used in this title 'invested capital' does not include stocks, bonds (other than obligations of the United States), or other assets, the income from which is not subject to the tax imposed by this title, nor money or other property borrowed, and means, subject to the above limitations:

"(a) In the case of a corporation or partnership: (1) Actual cash paid in, (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation or partnership, at the time of such payment (but in case such tangible property was paid in prior to January first, nineteen hundred and fourteen, the actual cash value of such property as of January first, nineteen hundred and fourteen, but in no case to exceed the par value of the original stock or shares specifically issued therefor), and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year."

As will subsequently appear, we must look largely to subdivision (a) (3) to find the "invested capital" in this case, as the original capital was only $5,000 and had long since been withdrawn. It is conceded that, if the partnership had "invested capital," the amount of the tax fixed by the Board of Tax Appeals, $199,611.21, is correct. On the other hand, if it had no "invested capital," or no more than "a nominal capital" (section 209, Revenue Act 1917, supra), the tax would have been about $60,000, being 8 per cent. upon the balance of the net income after deduction of $6,000 therefrom (sections 209, 210 [40 Stat. 307]) which has been paid. The petitioner accepts the facts as found by the Board of Tax Appeals, but contends that under these facts it follows as a conclusion of law that the tax liability is the lesser amount above mentioned. We will summarize the pertinent findings of fact as briefly as may be for the purposes of decision:

The partnership of Hind, Rolph & Co. was organized in 1898 and dissolved in September, 1921. It was composed of two partners, George U. Hind and James Rolph, Jr., each owning a half interest therein. Each contributed $2,500 in cash at the time of the

formation of the partnership, and no other contribution to capital was made by either of the partners. The copartnership had a very extended field of operations. It acted as agent for sugar plantations, coffee plantations, coal mines, steamship companies, owned and operated a lumber business, etc. Its principal business was that of a broker and commission merchant. It had a large volume of business and made a large profit. Its net income for 1917 was about $581,294.24. On December 31, 1916, the books of the partnership carried a capital account in the name of each partner which contained the capital contributed and in addition thereto earnings upon the partnership transactions allocated or paid to the partners. On December 31, 1916, the drawing accounts of the partners showed for Rolph a debit balance of $31,953.32 and for Hind a credit balance of $14,175.11. The total capital shown by the books of the copartnership was $221,953.31. Of this amount Rolph had withdrawn $31,953.32, as above stated, and also $75,945 for insurance premiums, a total of $107,340.22, leaving a partnership net worth of $114,054.96 credited on the books to Hind and to the extent of $7,778.20 to profit and loss. The petitioner contends that several items of appreciation of property during the time that the property was owned by the partnership were erroneously treated as an increase of capital, and that these amounts so erroneously entered on the books of the copartnership aggregate $259,-693.15; and that, upon the principle established by the Supreme Court in La Belle Iron Works v. U. S., 256 U. S. 377, 41 S. Ct. 528, 65 L. Ed. 998, these increases in the value of property owned by the copartnership which have not been realized were not properly a part of the partnership capital. These amounts were fixed by the Board of Tax Appeals, and on the argument of this appeal the respondent properly conceded that these additions to capital were not properly such and should not be so considered. Petitioner contends that with these items deducted from the net capital ($114,054.96), as found by the Board of Tax Appeals, there was no invested capital remaining. Petitioner further contends that, even if the amount due from Rolph to the partnership, amounting to $31,953.32 on the debit balance, and $75,945.03 on the insurance premium account, be treated as capital, thus making an addition of $107,898.35 to the $114,054.96 net capital as found by the Board of Tax Appeals, a total of $221,953.31, that total is still less than the deduction of $259,693.15 from the capital required by the elimination of the appreciation of property

held by the partnership which had not been realized as a profit, as stated above, and which was erroneously added by the partners to their capital. The petitioner therefore contends that under the findings of the Board of Tax Appeals the tax fixed should have been in the lesser amount above mentioned because there was no invested capital. To this the respondent replies that "invested capital" does not mean the net investment, but the total capital, and points to the finding of the Board of Tax Appeals that the assets of the copartnership on December 31, 1916, were $1,167,294. The liabilities were in the same amount. These liabilities as fixed by the books and found by the Board consisted of $503,588.49 due to banks and on notes payable; and $585,-266.14 due the clients of the partnership, $14,-175.11 due to George U. Hind, a partner, and $64,264.13 undivided profits, being $207,778.-07, less advances therefrom made to partners of $143,513.94. The Board found that, among the assets necessary for transaction of business, $550 was cash on hand, $5,390.48 furniture and fixtures; that the assets not necessary for the conduct of business acquired through use of borrowed money were $146,093.19 bills receivable, and $224,416.59 due from principals for whom the copartnership acted. In addition thereto, the Board of Tax Appeals found that the copartnership had assets having no connection with the operation of its business, $225,860.96 real estate and $537,982.78 stock investment. The partnership income for the calendar year 1917 was $638,750.90. The Board of Tax Appeals came to the conclusion that under the circumstances the taxpayer had failed to establish that it had no invested capital, and points out that on December 31, 1916, the corporation owned a number of ships carried on its books for approximately $200,000, and a hotel carried on its books for $143,651.22, with $146,-093.15 bills receivable, $224,416.15 due from principal, etc.

The position of the petitioner is that, notwithstanding a large amount of the assets of the corporation, the partners had not only spent all the original invested capital, but had withdrawn all the earnings, and that the copartnership was in fact insolvent. If we deduct from the assets of $1,167,294 the sum of $259,693.15 conceded not to be capital, we have remaining $907,600.85; deduct amount borrowed from banks, $503,588.49, we have a balance of $404,012.36, which is less than the amount due to the principals for which the copartnership operated ($585,266.14). We see no escape from the proposition that the amount due by the copartnership to its cli-

ents was borrowed money or property within the meaning of section 207, supra. The evidence indicates that the business of the copartnership was transacted largely upon the credit of its customers at the banks realized upon through drafts and letters of credit secured by bills of lading for goods bought or sold. One client allowed as much as $300,000 of $400,000 due to it to remain with the copartnership subject to draft. This was in part because the customer corporation was owned by Hind and his brothers. The findings of the Board in this regard are stated as follows: "The evidence indicates that the partnership employed in its business large sums of money amounting at times to $300,-000 to $400,000 left on deposit with it by other concerns with which it did business."

The Board finds that the amount due the copartnership principals on December 31, 1916, was $585,266.14. George U. Hind testified in that regard as follows: "We represented quite a few concerns that left balances with us, sometimes running up to three or four hundred thousand dollars. One of them was Hawaii Mill and Plantation and sugar plantations in Hawaii, mills owned by my brothers and myself. We were the owners. We were partners on the sugar. We handled their sugar as it came in. The money was paid to us and if the plantation needed money they drew on us, and we used to have large balances. We also represented the Hind Estate Company, which is owned by my brothers and myself, and they had a large balance. The Union Steamship Company of New Zealand, they had large balances also. We were agents for them. And some coffee plantations in Mexico we were agents for. Altogether it was like a bank. The money would come in and the money would go out."

It is conceded by the petitioner that it had capital invested to a large amount, but it contends that such "capital" invested is not "invested capital," as defined by the Revenue Law (section 207, supra), because such investment was of borrowed money or property, which, although capital in the ordinary sense of the term, was not such in view of the statutory definition which requires that, in ascertaining the amount of "invested capital," borrowed money or property shall be first deducted. By doing so in the case at bar nothing is left.

The same result is obtained by deducting from the surplus profits shown by the books, $114,059.96, the amount of profits attributable to the increase in property values not yet accrued by sale, $259,693.15. The Board failed to deduct the sum of $259,693.15 from the capital. This is now conceded to be error. It also failed to distinguish between the meaning of the statutory phrase "not more than a nominal capital." Section 209, supra. The Board rightly concluded that the capital of the petitioner was "more than nominal"; it failed to observe that it was all borrowed, and hence not "invested capital" within the statutory definition which expressly requires that such capital should not be considered as "invested capital." In view of this error we would remand the case to the Board of Tax Appeals for further consideration were it not that the facts found by the Board of Tax Appeals make it clear that the petitioner's capital was all borrowed money.

Order reversed.