FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 3 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LEOBARDO MORENO GALVEZ; JOSE LUIS VICENTE RAMOS; ANGEL DE JESUS MUNOZ OLIVERA, on behalf of themselves as individuals and others similarly situated,

Plaintiffs-Appellees,

v.

UR M. JADDOU[*], Director, United States Citizenship and Immigration Services; ALEJANDRO N. MAYORKAS, Secretary, United States Department of Homeland Security; ROBERT COWAN, Director, National Benefits Center; U.S. DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,

Defendants-Appellants.

No.   20-36052

D.C. No. 2:19-cv-00321-RSL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted March 9, 2022
Portland, Oregon

---

[*]   Defendants requested that Ur M. Jaddou, the current Director of the United States Citizenship and Immigration Services, replace Tracy Renaud as a Defendant-Appellee.

Before:  Susan P. Graber and Carlos T. Bea, Circuit Judges, and Christina Reiss,[**] District Judge.

Opinion by Judge Bea;
Partial Dissent by Judge Graber

---

## SUMMARY[***]

---

### Immigration

In a case in which Plaintiffs challenged delays by United States Citizenship and Immigration Services ("USCIS") in adjudicating petitions for Special Immigrant Juveniles ("SIJ") status, the panel affirmed the district court's issuance of a permanent injunction, vacated a provision of the injunction that permits SIJ petitioners (but not USCIS) to "toll" the deadline for adjudicating SIJ petitions, and remanded.

The SIJ program provides certain immigrant juveniles a pathway to lawful permanent residence status.  Under 8 U.S.C. § 1232(d)(2), applications for SIJ status "shall be adjudicated" not later than 180 days after they are filed.  Plaintiffs—three SIJ petitioners representing a certified class of some current and future SIJ petitioners from Washington State—filed suit in the district court against USCIS and other federal government defendants (the "Government").  The district court held that USCIS's delays were unlawful, and the Government did not challenge that holding on appeal.  At issue on appeal was only whether the district court erred, after granting summary judgment to Plaintiffs, by issuing a permanent injunction and in crafting its terms and scope.

The panel first addressed whether the district court exceeded its jurisdiction in enjoining the Government to comply with 8 U.S.C. § 1232(d)(2) in light of *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (2022).  In *Aleman Gonzalez*, the Supreme Court held that the jurisdictional bar of 8 U.S.C. § 1252(f)(1) generally prohibits

---

[**]  The Honorable Christina Reiss, United States District Judge for the District of Vermont, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the statutory provisions specified in that law. However, the panel explained that there is inconsistency between the reach of the jurisdictional bar as it appears in the provision that enacted it, as opposed to how it appears as codified in the United States Code. The panel further explained that the text of the United States Code cannot prevail over the Statutes at Large when the two are inconsistent. Thus, the panel held—as the parties had agreed—that the jurisdictional bar of § 242(f)(1) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1252(f)(1), does not apply to an order that enjoins or restrains the operation of the law at issue here, § 235(d)(2) of the William Wilberforce Trafficking Victims Protection Reauthorization Act, codified at 8 U.S.C. § 1232(d)(2). The panel therefore held that the district court had jurisdiction to enter the injunction.

Next, the panel concluded that the district court did not abuse its discretion in entering the permanent injunction. The panel rejected the Government's claims that the district court failed to consider the operational hardship on the Government in balancing hardships, and that the district court relied upon stale evidence to determine that Plaintiffs were likely to suffer irreparable harm.

As to the scope of the injunction, the Government first argued that the district court abused its discretion in strictly imposing the 180-day timeline without tolling for requests for evidence and notices of intent to deny or other unique circumstances because the injunction prejudices agency activities of higher or competing priority as well as SIJ petitioners from the other 49 states. The panel found no abuse of discretion in this respect but explained that its holding was limited to the record before it, stressing that it did not hold that the district court's order should stand no matter the circumstances.

Next, the Government challenged the provision of the permanent injunction that allows SIJ petitioners—but not USCIS—to toll the statutory deadline. The panel held that the district court abused its discretion because the record did not support the reasonableness of an order that broadly permits each and every SIJ petitioner to "toll" indefinitely Congress's timeline for adjudicating SIJ petitions, without apparent consideration of existing regulations, without an affirmative showing of good cause specific to each class member's claim for tolling, when the district court held USCIS strictly accountable to the statutory deadline, and where 8 U.S.C. § 1232(d)(2) plainly provides no mechanism for "tolling." On remand, the panel instructed that the district court may consider amending its injunction to allow tolling on a case-by-case basis, upon an affirmative showing of good cause, subject to a

definite limitation on the tolling duration.

Dissenting in part, Judge Graber wrote she concurred in the majority's opinion with one exception: she emphatically disagreed with the majority's conclusion that it was unreasonable to allow for the extension of the 180-day deadline if the beneficiary of the deadline—the child—asked for more time. Judge Graber wrote that the injunction violated no law, disagreeing with the majority's conclusion that, if USICIS must comply with the applicable deadline, so too must the applicants. Observing that the majority recognized that any SIJ applicant is entitled to toll the deadline for good cause, Judge Graber wrote that the majority failed to explain why, considering the whole context of this case—in which Plaintiffs sought judicial relief because of the agency's own undue delay—the inclusion of a provision that any applicant is entitled to toll the 180 days simply upon request constituted an abuse of discretion.

---

## COUNSEL

---

Matt Adams (argued), Aaron Korthuis, Leila Kang, and Margot M. Adams, Northwest Immigrant Rights Project, Seattle, Washingon; Tim Warden-Hertz, Meghan E. Casey, and Olivia Saldaña-Schulman, Northwest Immigrant Rights Project, Tacoma, Washington; for Plaintiffs-Appellees.

Katelyn Massetta-Alvarez (argued) and Elizabeth R. Veit, Trial Attorneys; William C. Silvis, Assistant Director; William C. Peachey, Office of Immigration Litigation Director, District Court Section; Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division; Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C.; Matt Waldrop, Assistant U.S. Attorney, Office of the United States Attorney, Seattle, Washington; for Defendants-Appellants.

Catherin Weiss, Tracy Buffer, Amanda K. Cipriano, and Maxine Peskens, Lowenstein Sandler LLP, Roseland, New Jersey, for Amici Curiae Catholic Legal Immigration Network Inc. (Clinic), Diocesan Migrant & Refugee Services Inc., The Door, Florence Immigrant & Refugee Rights Project, Immigrant Justice Corps, Kids in Need of Defense (KIND), Lawyers' Committee for Civil Rights of the San Francisco Bay Area, The Legal Aid Society, New Jersey Consortium for Immigrant Children, Political Asylum/Immigration Representation Project (PAIR), Public Counsel, Safe Passage Project, and Young Center for Immigrant Children's Rights.

BEA, Circuit Judge:

United States Citizenship and Immigration Services ("USCIS") administers the Special Immigrant Juveniles ("SIJ") program, which provides certain immigrant juveniles a pathway to lawful permanent residence status. Federal law requires the "[e]xpeditious adjudication" of SIJ petitions: "[a]ll applications for special immigrant status . . . shall be adjudicated by the Secretary of Homeland Security not later than 180 days after the date on which the application is filed." 8 U.S.C. § 1232(d)(2). But the Secretary has not always met this deadline. In fact, as of September 24, 2018, USCIS had a backlog of 32,518 SIJ petitions, 23,589 of which had been pending for more than 180 days.

This case does not require us to decide whether USCIS violated § 1232(d)(2) by delaying the adjudication of SIJ petitions. The district court held that USCIS's delays were unlawful, and the Government does not challenge that holding on appeal. At issue is only whether the district court erred, after granting summary judgment to the plaintiffs, by issuing a permanent injunction and in crafting its terms and scope. The injunction holds USCIS strictly to the 180-day deadline but permits SIJ petitioners in certain circumstances to "toll" the deadline to respond to a request for evidence or a notice of intention to deny sent by USCIS. We affirm the district court's issuance of the permanent injunction and, in part, affirm the injunction's scope and terms. But because the injunction's tolling provision is not narrowly

1

tailored to remedying irreparable harm, does not contemplate USCIS's relevant regulations, and reflects a failure to measure the parties' proposed tolling provisions each by the same standard, we vacate the tolling provision and remand to the district court for further proceedings consistent with this opinion.

I.

Plaintiffs—three SIJ petitioners who now represent a certified class of some current and future SIJ petitioners from Washington State—filed suit in the district court against the Director of USCIS, the Secretary of Homeland Security, the director of the USCIS National Benefits Center ("NBS"), the Department of Homeland Security ("DHS"), and USCIS (collectively, "Defendants" or the "Government"), seeking declaratory and injunctive relief. The complaint alleged that Defendants "have an unlawful practice of delaying the adjudication of [SIJ] petitions filed by proposed class members beyond the 180-day statutory deadline" in violation of 8 U.S.C. § 1232(d)(2), 5 U.S.C. § 555(b), and 5 U.S.C. § 706(1). The complaint also alleged that USCIS violated the Immigration and Nationality Act ("INA") and the Administrative Procedure Act ("APA") by adopting legal guidance in 2018 ("2018 Legal Guidance") that caused many juveniles who were at least eighteen but younger than twenty-one to become ineligible for SIJ status. Because Plaintiffs' claim about the 2018 Legal Guidance is no longer at issue in this case, we

do not describe it in detail.[1]

On July 17, 2019, the district court granted Plaintiffs' motion for class certification[2] and Plaintiffs' motion for a preliminary injunction. As relevant now, the preliminary injunction ordered USCIS to:

> adjudicate all outstanding [SIJ] petitions based on a Washington state court order within thirty days of the date of this Order if more than 150 days have already passed since the petition was filed . . . [or otherwise] within the 180-day period set forth in the statute in the absence of an affirmative showing that the petition raises novel or complex issues which cannot be resolved within the allotted time.

---

[1] The 2018 Legal Guidance provided that "in order for a court order [finding that the juvenile's 'reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis under state law,' which is a requirement for eligibility for SIJ status under 8 U.S.C. § 1101(a)(27)(J)(ii)] . . . , the court must have competent jurisdiction to determine both whether a parent could regain custody and to order reunification, if warranted." As the Government acknowledged in April 2018, because most state courts lose jurisdiction to order that a juvenile be reunified with a parent once the juvenile turns 18 (even though various state programs and proceedings grant some of those state courts authority to commit 18- to 20-year-olds to, or place them under the custody of, certain *non-parent* legal guardians), the 2018 Legal Guidance meant that 18- to 20-year-olds in most States could no longer gain SIJ status.

[2] The district court certified the following class: "All individuals who have been issued predicate Special Immigrant Juvenile Status ("SIJS") orders by Washington state courts after turning eighteen years old but prior to turning twenty-one years old and have submitted or will submit SIJS petitions to [USCIS] prior to turning twenty-one years old." By "predicate . . . orders," the district court referred to Washington state court orders concerning juveniles that would satisfy the requirements of 8 U.S.C. § 1101(a)(27)(J)(i)–(ii) for a juvenile's eligibility for SIJ status.

The district court denied Defendants' motion for reconsideration of the preliminary injunction.

While subject to the preliminary injunction, USCIS adjudicated or re-adjudicated the SIJ petitions of the three named Plaintiffs and "made efforts to identify absent class members" and adjudicate their SIJ petitions. The SIJ petitions of the three named Plaintiffs were all approved. As of October 5, 2020, the parties stated that they were not aware of any more outstanding petitions from any class member.

In October 2019, USCIS effectively rescinded its 2018 Legal Guidance.[3] Separately, USCIS re-opened the public comment period for a proposed rule that was initially published in September 2011, setting forth the agency's interpretation of and intent regarding the expeditious adjudication provision of 8 U.S.C. § 1232(d)(2):

> USCIS intends to adhere to the 180-day benchmark, taking into account general USCIS regulations pertaining to receipting of petitions, evidence and processing, and assuming the completeness of the petition and supporting evidence. Proposed 8 CFR 204.11(h); 8 CFR 103.2. The 180-day timeframe begins when the SIJ petition is receipted, as reflected in the receipt notice sent to the SIJ petitioner. 8 CFR 103.2(a)(7). If USCIS sends a request for initial evidence, the 180-day timeframe will start over

---

[3] The agency issued and adopted an Administrative Appeals Office decision clarifying that USCIS does not require that the juvenile court had jurisdiction to place the juvenile in the custody of the unfit parents in order to make a qualifying determination regarding the viability of parental reunification.

from the date of receipt of the required initial evidence. 8 CFR 103.2(b)(10)(i). If USCIS sends a request for additional evidence, the 180-day timeframe will stop as of the date USCIS sends the request, and will resume once USCIS receives a response from the SIJ petitioner. 8 CFR 103.2(b)(10)(i). USCIS will not count delay attributable to the petitioner or his or her representative within the 180-day timeframe.

76 Fed. Reg. at 54983 (hereinafter "Proposed Rule").[4]

On October 5, 2020, the district court granted Plaintiffs' motion for summary judgment on all counts, denied Defendants' motion for summary judgment, and entered a permanent injunction against Defendants.

In granting summary judgment to Plaintiffs, the district court held that "USCIS's delayed consideration of SIJ petitions for periods well past the 180 days specified in the governing statute is . . . unlawful." The district court rejected Defendants' argument "that USCIS is authorized to extend the deadline at any point by asking the petitioner for additional information" on the theory that, "by tying the running of the 180-day period to the date an SIJ application is filed, Congress has provided USCIS with discretion to toll that 180-day deadline in situations where the agency seeks new or additional evidence or information from the SIJ petitioner." The district court reasoned that "Congress unambiguously intended the adjudication to be expeditious, providing a clear and mandatory deadline" and, while "[u]nder

---

[4] The agency's final rule became effective on April 7, 2022. 8 C.F.R. § 204.11(g)(1).

5

governing case law, that deadline is not absolute, . . . it [nevertheless] provides the frame of reference for determining what is reasonable." Noting that all the named Plaintiffs in this case "waited far more than 180 days for a determination of their petitions with no indication that their cases raised novel or complex issues" and that "[t]wo of the named plaintiffs waited three or four times the number of days Congress allowed before receiving an agency determination," the district court held that Defendants' "adjudications were not expeditious and the delays were not reasonable in light of the time frame chosen by Congress."[5]

The district court then balanced the traditional equitable factors of irreparable injury, inadequate remedies at law, and the balance of hardships between the parties and the public interest, and determined that it should issue a permanent injunction. Plaintiffs filed proposed terms for the permanent injunction. Defendants proposed in briefing that the court "'adopt the tolling approach set out in the agency's [Proposed Rule]' so that the deadline resets or is tolled if the agency requests additional information." The district court entered a permanent injunction that, consistent with Plaintiffs' proposed terms, requires Defendants to adjudicate SIJ

---

[5] The district court also granted summary judgment to Plaintiffs on their claims that the 2018 Legal Guidance violated the INA and the APA. The district court rejected Defendants' argument that Plaintiffs' claims regarding the reunification requirement were moot under the voluntary-cessation exception to mootness. Defendants do not appeal these holdings. Accordingly, our opinion does not address the district court's holding that the 2018 Legal Guidance violated the INA or the APA.

applications based on Washington state court orders within Congress's 180-day-from-filing deadline, but permits the statutory deadline to be "toll[ed]" if "the SIJ petitioner requests additional time to respond" to a request for information or a notice of intent to deny from USCIS.[6]

Defendants timely appeal. They challenge only the entry and terms of the permanent injunction, not the district court's grant of summary judgment on all counts to Plaintiffs.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We review a district court's issuance of a permanent injunction under three standards: "factual findings for clear

---

[6] The terms of the injunction are as follows:

> Defendants must adjudicate any SIJ petitions based on a Washington state court order within 180 days of the date that the application is filed by the petitioner (*i.e.*, in the parlance of the proposed rule, the date "the SIJ petition is receipted, as reflected in the receipt notice sent to the SIJ petitioner"). This timeline is inclusive of any requests for additional evidence or notices of intent to deny that USCIS may issue to a petitioner, unless the SIJ petitioner requests additional time to respond to the request/notice and thereby tolls the time in which USCIS must adjudicate the petition. USCIS must provide SIJ petitioners with sufficient time prior to the expiration of the 180 days to respond to the request/notice in an effort to complete final adjudication of the SIJ petition in a timely manner. USCIS may not use the issuance of a request for information or notice of intent to deny for the sole purpose of avoiding the statutory deadline for adjudication of an SIJ petition.

7

error, legal conclusions de novo, and the scope of the injunction for abuse of discretion." *United States v. Washington*, 853 F.3d 946, 962 (9th Cir. 2017).

III.

Before turning to the substantive challenges presented by Defendants, we begin by considering whether the district court exceeded its jurisdiction in enjoining the Defendants to comply with 8 U.S.C. § 1232(d)(2) in light of the Supreme Court's recent decision in *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (2022). We conclude that the district court had jurisdiction to enter the injunction.

In *Aleman Gonzalez*, the Supreme Court held that 8 U.S.C. § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the . . . statutory provisions [specified in that law]." 142 S. Ct. at 2065.[7] The text of 8 U.S.C. § 1252(f)(1) provides that the jurisdictional bar applies, in certain circumstances, to equitable relief that "enjoin[s] or restrain[s] the operation

---

[7] 8 U.S.C. § 1252(f)(1) provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8

of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996." Because § 1252(f)(1) is located within Title 8, Chapter 12, Subchapter II of the United States Code, the reference in § 1252(f)(1) to "the provisions of part IV of this subchapter" appears to refer to 8 U.S.C. §§ 1221–1232 (*cf. Aleman Gonzalez*, 142 S. Ct. at 2064 (citing this range)), a set of sections that includes the codified version of the provision at issue in this case (8 U.S.C. § 1232(d)(2)).

However, the provision that has been codified at 8 U.S.C. § 1252(f)(1) was enacted by § 306(a)(2) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Section 306(a)(2) of the IIRIRA amended the INA by, among other things, adding § 242(f)(1), the provision that was encoded at 8 U.S.C. § 1252(f)(1). Unlike 8 U.S.C. § 1252(f)(1), the text of § 242(f)(1) of the INA provides that it applies to "the provisions of chapter 4 of title II, as amended by the [IIRIRA]." Pub. L. No. 104-208, Div. C, § 306(a)(2), 110 Stat. at 3009-611 (1996). Elsewhere, the IIRIRA provides that, "whenever in this division [i.e., IIRIRA] an amendment . . . is expressed as the amendment . . . of a section or other provision, the reference shall be considered to be made to that section or provision in the Immigration and Nationality Act." Pub. L. No. 104-208, Div. C, § 1(b)(1), 110 Stat. at 3009-546. This means that the jurisdictional bar of § 242(f)(1) of the

9

INA, as enacted by § 306(a)(2) of the IIRIRA, applies to "the provisions of chapter 4 of title II [*of the INA*], as amended by [IIRIRA] of 1996."

The reference in § 306(a)(2) of the IIRIRA to "the provisions of chapter 4 of title II" was changed to "the provisions of part IV of this subchapter" in the encoded version of the law. But the text of the United States Code "cannot prevail over the Statutes at Large when the two are inconsistent." *Stephan v. United States*, 319 U.S. 423, 426 (1943) (per curiam); *see also U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993) ("[T]he Statutes at Large . . . provide[] the 'legal evidence of laws.'" (quoting 1 U.S.C. § 112)); *Preston v. Heckler*, 734 F.2d 1359, 1368 (9th Cir. 1984) (The law "as it appears in the Statutes at Large must prevail" over an "inconsistent" version in the United States Code).

Accordingly, the jurisdiction-stripping provision of § 242(f)(1) of the INA applies to certain injunctions that enforce or restrain certain provisions of the INA as modified by the IIRIRA. However, 8 U.S.C. § 1232(d)(2) was enacted in 2008 by § 235(d)(2) of the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"). TVPRA, Pub. L. No. 110-457, § 235(d)(2), 122 Stat. at 5080 (2008). Although some provisions of the TVPRA directly amend the INA, including some provisions within § 235 of the TVPRA, § 235(d)(2) does not amend the INA. Thus, the law that § 235(d)(2) of the TVPRA enacted is not a provision of the INA even though it has been placed within Title 8, Chapter 12,

10

Subchapter II of the United States Code. And § 235(d)(2) of the TVPRA is certainly not a provision of the INA "*as amended by* the [IIRIRA] of 1996," 8 U.S.C. § 1252(f)(1) (emphasis added). The TVPRA was enacted in 2008; it could not have enacted a law that was amended by the IIRIRA of 1996.

Accordingly, we hold—as the parties in this case have agreed in supplemental briefing—that the jurisdictional bar of § 242(f)(1) of the INA, codified at 8 U.S.C. § 1252(f)(1), does not apply to an order that "enjoin[s] or restrain[s] the operation of" § 235(d)(2) of the TVPRA, codified at 8 U.S.C. § 1232(d)(2).

## IV.

We now turn to Defendants' challenges to the district court's entry of the permanent injunction. Defendants contend that the district court abused its discretion by: (1) entering a permanent injunction; and (2) crafting the scope of the injunction. We address each argument in turn.

## A.

To determine whether the district court abused its discretion in entering the injunction, "we first look to whether the trial court identified and applied the correct legal rule to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc). We then assess whether the district court's decision "resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Id.*

11

"[A] plaintiff seeking a permanent injunction . . . must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The third and fourth factors merge when the Government is the party opposing the injunction. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Defendants claim that the district court abused its discretion in entering a permanent injunction because: (1) it failed to consider the operational hardship on the Government in balancing hardships; and (2) it relied upon stale evidence to determine that Plaintiffs were likely to suffer irreparable harm. We disagree.

1.

The district court determined that equitable relief was warranted after considering the balance of hardships between the parties and the public interest. Defendants now argue that the district court abused its discretion on the ground that it "fail[ed] to consider USCIS's evidence of operational hardship and competing priorities." In particular, Defendants rely on a single sentence in their Cross Motion for Summary Judgment: "[C]ontinuing to impose a judicially-mandated deadline for adjudicating SIJ petitions at this juncture will cause substantial hardship to USCIS,

which is tasked with overseeing the review and approval of countless immigration benefit programs." Defendants' Cross-Motion for Summary Judgment cited a declaration, in which the Deputy Associate Director of the Field Operations Directorate of USCIS (Valverde) testified that, because the National Benefits Center had only 59 Immigration Service Officers ("ISOs") assigned to adjudicate SIJ petitions, requiring USCIS to adjudicate Washington SIJ petitions by the 180-day deadline "would entail creating a permanent system whereby [Washington] SIJ petitions are . . . prioritize[d] . . . over other states' SIJ petitions," which "would be prejudicial to SIJ petitioners from the other 49 states."

The district court did not abuse its discretion in determining that the balance of hardships tipped in favor of Plaintiffs. The district court considered and rejected Defendants' argument that "the balance of hardships tips in their favor." The district court also rejected Defendants' argument that USCIS "must be provided . . . latitude to address SIJ petitions that may take longer than 180 days to adjudicate." The district court noted, among other things, that Defendants "offer[ed] no evidence suggesting that SIJ petitions are factually or legally complex or otherwise require more than 180 days to review, investigate, and adjudicate." Indeed, Defendants had previously presented evidence that it takes an average of only "four hours for an SIJ ISO to adjudicate an SIJ petition . . . from receipt to case completion."

13

Although the district court did not spell out the particulars of the claim that, given the Government's limited resources, the injunction would cause Washington SIJ applications to be prioritized over applications from other States, neither did the Government's summary judgment briefing. And while the district court properly confined the scope of its injunction to the Washington-specific facts before it, the district court effectively answered Defendants' claim about prioritizing SIJ petitions from some States over others by implying that USCIS should find a way to adjudicate SIJ petitions from *all* States by Congress's deadline: "USCIS' practice of delaying adjudication of SIJ petitions (and its intent to continue doing so) are unlawful, and it is clear that neither equity nor the public's interest are furthered by allowing violations of federal law to continue."

## 2.

The district court found that class members would suffer irreparable injury in the absence of continued equitable relief because it found a likelihood that (1) the agency would continue to delay adjudication of future SIJ petitions from the State of Washington beyond Congress's 180-day deadline without continued equitable relief, and (2) delay in the adjudication of SIJ petitions causes SIJ petitioners irreparable harms.

Defendants argue that the district court abused its discretion in finding that class members would suffer an irreparable injury in the absence of continued

14

equitable relief on the grounds that it "relied upon stale evidence" that was insufficient to show "ongoing or future irreparable injury." We disagree.

First, Defendants argue that the district court "did not address the evidence USCIS submitted demonstrating that it had consistently adjudicated SIJ petitions of Washington state petitioners within 180 days absent novel or complex issues requiring additional adjudication time." But the district court did acknowledge that neither party was aware of any "outstanding class member petitions" when it issued its order. And, even if Defendants had adjudicated all class members' petitions in a timely manner by the time the district court issued the permanent injunction, the fact that Defendants timely adjudicated petitions *while subject to a preliminary injunction ordering them to do so* does not tend to prove that Defendants would have continued to adjudicate class members' petitions on time had Defendants been relieved of the district court's injunctive orders. We note that the class was not limited to individuals who already had filed SIJ petitions when the district court certified the class on July 17, 2019: it included individuals who "have been issued" predicate SIJ findings from Washington state courts after turning eighteen years old and "will submit" SIJ petitions before turning twenty-one. So, the district court correctly considered whether class members who filed "future SIJ petition[s] in the State of Washington" would face harm.

15

Second, Defendants challenge the district court's finding that prolonged adjudication delays were a regular practice of USCIS and not caused by the 2018 Legal Guidance. We agree that USCIS's decision in the summer of 2017 to begin "holding SIJ applications for individuals between the ages of 18 and 21" while it "was awaiting" the 2018 Legal Guidance resulted in some delay in adjudicating SIJ petitions. But we do not find clear error in the district court's finding that, nevertheless, "delays are a function of USCIS policy that is entirely separate from, and not contingent upon, the reunification requirement [of the 2018 Legal Guidance]." Defendants appear to have accelerated the adjudication of class members' applications while subject to the district court's orders granting continuing injunctive relief. Further, Defendants do not deny the district court's finding that USCIS "does not believe it is obliged to make a determination within 180 days of the date on which the petitioner files his or her petition." Nor could they: the agency adopted a final rule during this appeal that provides that USCIS will—only, "[i]n general"—adjudicate SIJ petitions within the statutory deadline, and that rule permits USCIS to "reset or suspend[]" the statutory timeline whenever the agency finds (respectively) that the petition "is missing required initial evidence" or that USCIS "requests that the applicant or petitioner submit additional evidence or respond to other than a request for initial evidence." 8 C.F.R. §§ 204.11(g)(1), 103.2(b)(10)(i). Finally, Defendants made clear that they would prefer to abandon,

16

rather than make permanent, the staffing arrangements they adopted to comply with the preliminary injunction, which they claim would be necessary "to indefinitely comply with a 180 day adjudication mandate" for petitions from Washington State (which, again, Congress requires for SIJ petitions arising from all States).

Third, Defendants argue that Plaintiffs "no longer face the same harms that they faced at the onset of the case, which were caused by the now-defunct 2018 Legal Guidance." But Plaintiffs' suit challenged two of USCIS's practices: the 2018 Legal Guidance and USCIS's practice of delaying adjudication of SIJ petitions beyond 180 days. As discussed above, class members may have filed new SIJ petitions after the district court's order or may still do so. The fact that Defendants rescinded the 2018 Legal Guidance does not shield class members—juveniles who reside outside the country of their birth and live not under the custody of their parents—from the harms that the district court adequately catalogued as caused by USCIS's delay in determining whether the juveniles can attain SIJ status within the deadline Congress set.[8]

---

[8] We also reject Defendants' argument that class members do not face irreparable harm from Defendants' delay beyond Congress's deadline for adjudicating SIJ petitions simply because SIJ petitioners who happen to come from four countries would not lose their priority dates for applying for lawful permanent residency status. There is no reason to conclude that all class members were born in or originated from the four countries of Honduras, El Salvador, Guatemala, or Mexico. And the district court identified harms arising from the delay in adjudicating SIJ petitions other than the delay in applying for lawful permanent residency status.

B.

Defendants next challenge the scope of the injunction. Although the "district court has considerable discretion in fashioning suitable relief and defining the terms of an injunction," the injunction "must be tailored to remedy the specific harm alleged." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). "An overbroad injunction is an abuse of discretion." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (citation omitted). We have suggested that specific tailoring is particularly important "[w]here relief can be structured on an individual basis," *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987), and where "[i]njunctive relief [is granted] against a state agency or official." *Gary H. v. Hegstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987). Finally, the district court "must act within the bounds of . . . statute and without intruding upon the administrative province but it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 824 (9th Cir. 2018) (cleaned up). With these standards in mind, we agree in part with Defendants.

1.

Defendants first argue that the district court abused its discretion in "strictly imposing [Congress's] 180-day timeline without tolling for [requests for evidence] and [notices of intent to deny] or other unique circumstances," because the

18

injunction "prejudices agency activities of higher or competing priority as well as SIJ petitioners from the other 49 states."

We are not persuaded that, on the record before us, the district court abused its discretion. To begin, Defendants did not present the district court with proposed language for a permanent injunction that would meaningfully prevent Defendants from reverting to the practice of delaying the adjudication of class members' SIJ petitions that the district court held was unlawful—a holding that Defendants do not challenge now.[9]

Moreover, the reasonableness of the district court's order that Defendants adjudicate Washington State SIJ petitions by the 180-day deadline is adequately supported by the record. Congress specifically mandated "expeditious adjudication" for SIJ petitions, 8 U.S.C. § 1232(d)(2), unlike nearly all other petitions or applications for immigration benefits. The district court found that Defendants

---

[9] Defendants contend that the district court erred in rejecting "USCIS's proposal to toll the 180-day deadline" on the grounds that the district court erroneously held "that *any* adjudicative delay beyond 180 days is unreasonable." Not so. The district court had other reasons for rejecting USCIS's proposal. And the district court did not hold that *any* adjudicative delay beyond 180 days is unreasonable. Rather, the district court held that (1) the 180-day "deadline is not absolute, but it provides the frame of reference for determining what is reasonable," (2) Defendants' interpretation of 8 U.S.C. § 1232(d)(2) as permitting Defendants "to toll" or even "reset" the 180-day deadline "in situations where the agency seeks new or additional evidence or information from the SIJ petitioner" is incorrect, and (3) Defendants' previous delays in adjudicating SIJ petitions were unlawful. We do not directly review these holdings because Defendants have not challenged the district court's grant of summary judgment to Plaintiffs.

"offer[ed] no evidence suggesting that SIJ petitions are factually or legally complex or otherwise require more than 180 days to review, investigate, and adjudicate." Previously, Defendants admitted that "it takes an average of four hours for an SIJ ISO to adjudicate an SIJ petition" and that after only "one week" of training a USCIS employee can "begin[] to adjudicate [SIJ] cases" under supervision (even if it may take much longer for the officer to become "fully proficient" in SIJ petitions). Defendants also asserted that SIJ petitions made up less than one percent of all applications and petitions received by USCIS's National Benefits Center in 2018, which suggests that USCIS could allocate more ISOs to carry out Congress's direction that the agency "expeditious[ly]" adjudicate SIJ petitions.

Finally, if circumstances have changed such that the district court's injunction is no longer needed, or that its scope or terms are no longer correct, Defendants remain free to move the district court to modify its equitable relief. Fed. R. Civ. P. 60(b); *see also Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1256 (9th Cir. 1999) ("[A] party may be relieved from a final judgment or decree where it is no longer equitable that the judgment have prospective application." (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 380 (1992))).

Our holding is limited to the record before us. We stress that we do not hold that the district court's order requiring Defendants to adjudicate each SIJ petition strictly within 180 days should stand no matter the circumstances. *See Nat'l Wildlife*

20

*Fed'n*, 886 F.3d at 823 ("It is not an abuse of discretion for a court to issue an injunction that does not completely prevent the irreparable harm that it identifies."). Our assessment of the reasonableness of the terms of the district court's injunction might be different if, for example, an outbreak of COVID-19 prevented most of USCIS's approximately 59 ISOs who are assigned to adjudicate SIJ petitions from working for an extended period of time and prevented USCIS from reassigning other employees to that task.

2.

Defendants also challenge the provision of the permanent injunction that allows SIJ petitioners, if requested additional evidence or issued a notice of intent to deny by USCIS, to toll the statutory deadline. The injunction requires Defendants to adjudicate class members' petitions within the statutory deadline of 180 days. The tolling provision provides that "[t]his timeline is inclusive of any requests for additional evidence or notices of intent to deny that USCIS may issue to a petitioner, unless the SIJ petitioner requests additional time to respond to the request/notice and thereby tolls the time in which USCIS must adjudicate the petition."

Defendants argue that the tolling provision "contravenes" USCIS's regulations. Defendants further argue that "the district court's reasoning for strictly imposing the 180-day deadline—while simultaneously permitting SIJ petitioners to request additional time to respond to [requests for evidence] and [notices of intent

21

to deny]—contravenes the standard for issuing injunctive relief and lacks support in the record." We agree that this tolling provision reflects an abuse of discretion for three reasons.

a.

First, the permanent injunction's broad tolling provision, available to petitioners, but not to the government, is not "narrowly tailored to avoid the irreparable harm that the district court identified." *Nat'l Wildlife Fed'n.*, 886 F.3d at 823. Separate from granting petitioners the ability to "toll" the statutory timeline, the permanent injunction already addresses Plaintiffs' concern that petitioners may not have enough time to respond to requests for evidence: It orders USCIS to "provide SIJ petitioners with sufficient time prior to the expiration of the 180 days to respond" to such requests.

Moreover, unlike the district court's preliminary injunction, the permanent injunction does not require an affirmative showing of good cause before it permitted a petitioner to "toll" Congress's timeline for adjudicating SIJ petitions. It is unreasonable to assume, without an explicit finding of facts, that any time USCIS asks a SIJ petitioner for further information, no matter the nature of the request or the circumstances of the SIJ petitioner, there is justification to grant a petitioner's request for the suspension of Congress's timeline for an unlimited amount of time. For instance, if USCIS were to enquire of a petitioner as to the correct spelling of

22

his name, there would be no basis for the petitioner to toll the time for adjudication. *Cf. Bresgal*, 843 F.2d at 1170 ("Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown."). Because the district court's preliminary injunction contemplated tolling only for petitions that raised "novel or complex issues which [could not] be resolved within the allotted time," a provision which would more narrowly tailor the tolling language to the identified harm, *see California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018) ("The scope of the remedy must be no broader and no narrower than necessary to redress the injury shown by the plaintiff[s]."), yet is absent from the permanent injunction, the tolling language is too broad.

b.

Second, the tolling language conflicts with two existing regulations, neither of which were challenged by Plaintiffs nor addressed by the language of the injunction.

The first regulation, 8 C.F.R. § 103.2(b)(8)(iv), requires USCIS to set a deadline for a petitioner or an applicant seeking an immigration benefit to respond to a request/notice:

> [A] request for evidence or notice of intent to deny will indicate the deadline for response, but in no case shall the maximum response period provided in a request for evidence exceed twelve weeks, nor shall the maximum response time provided in a notice of intent to deny exceed

23

thirty days. Additional time to respond to a request for evidence or notice of intent to deny may not be granted.

The second regulation, 8 C.F.R. § 103.2(b)(13)(i), provides that if a petitioner seeking an immigration benefit "fails to respond to a request for evidence or a notice of intent to deny by the required date," i.e. the deadline for the petitioner's response that USCIS was required to include with the request/notice, the USCIS may "summarily den[y]" the petition.[10]

The broad tolling language is inconsistent with these regulations. By allowing petitioners to "request[] additional time to respond to the request/notice," the injunction squarely contradicts § 103.2(b)(8)(iv), which states that "[a]dditional time to respond to [a request/notice] may not be granted." Moreover, the injunction does not explain *how much* "additional time" the petitioner may obtain to respond to the request/notice, which leads us to conclude that the petitioner may toll both the statutory and regulatory deadlines for an indefinite period, which conflicts with USCIS's ability summarily to deny a petition in which the petitioner failed to respond to a request/notice in a timely fashion. 8 C.F.R. § 103.2(b)(13)(i); *see Nat'l*

---

[10] While Plaintiffs argue that certain provisions of 8 C.F.R. § 103.2 should not be applied to the adjudication of SIJ petitions because Plaintiffs argue those provisions fail to "tak[e] into account the statutorily-mandated timeline specific to SIJ petitions," Plaintiffs have not challenged specifically §§ 103.2(b)(8)(iv) nor (13)(i).

24

*Wildlife Fed'n*, 886 F.3d at 824 (discouraging district courts from "intruding upon the administrative province" when issuing injunctions).

c.

Finally, the record before us does not establish that the district court measured the parties' proposed tolling provisions against the same standard. The district court adopted Plaintiffs' proposed language for the injunction instead of Defendants' tolling proposal in part because it found that Defendants' tolling proposal was inconsistent with the district court's interpretation of 8 U.S.C. § 1232(d)(2) and the APA. But the district court did not explain why Plaintiffs' proposal, that SIJ petitioners—but not USCIS—be permitted to "toll" indefinitely Congress's deadline for determination of the application, was consistent with 8 U.S.C. § 1232(d)(2). *See* Fed. R. Civ. P. 52(a)(1) ("[T]he court must find the facts specially and state its conclusions of law separately. . . on the record.").

Both proposed tolling provisions could result in delaying the adjudication of SIJ petitions well beyond the timeframe chosen by Congress. And, plainly, 8 U.S.C. § 1232(d)(2) provides no mechanism for tolling: it states merely that "[a]ll applications for special immigrant status . . . shall be adjudicated by the Secretary of

25

Homeland Security not later than 180 days after the date on which the application is filed." 8 U.S.C. § 1232(d)(2).[11]

---

[11] We agree with the dissent that the statutory deadline was likely enacted for the benefit of SIJ petitioners, not the Government. Dissent at 3–7. But we primarily interpret a statute by its text; we do not augment or make exceptions to the law as we think would better achieve the results some may reasonably interpret the law to be aimed to achieve. *See Laidlaw's Harley Davidson Sales, Inc. v. Comm'r of Internal Revenue*, 29 F.4th 1066, 1070–71 (9th Cir. 2022); *see also Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'"). We do not go searching for statutory "purpose" when the text of the statute is clear, and, indeed, the dissent fails to identify any such textual ambiguity justifying the tolling provision here.

Moreover, "no legislation pursues its purposes at all costs." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987). As the dissent observes, the purpose of section 1232 may be to protect vulnerable unaccompanied immigrant children, Dissent at 5, but we cannot "assume that whatever furthers [that] primary objective must be the law," *Rodriguez*, 480 U.S. at 526, especially when such a construction is contrary to the express statutory language mandating a decision within 180 days after application. Congress's intent in imposing that deadline may have been to benefit SIJ petitioners, but Congress's decision to choose specifically 180 days, use mandatory language, and omit tolling language may reflect competing values that have *already* been considered by Congress in determining how best to effectuate section 1232's overarching goal of protecting vulnerable immigrant children. Creating a carveout where the text provides none may actually "frustrate[] rather than effectuate[] legislative intent." *Id.*

Finally, the dissent argues that the 180-day deadline is waivable by the Petitioners because it was enacted for their benefit. Dissent at 6–7 (citing *Shutte v. Thompson*, 82 U.S. (15 Wall.) 151, 159 (1872); *Comm'r v. Hind*, 52 F.2d 1075, 1076 (9th Cir. 1931)). That is an interesting theory. But neither case cited by the dissent interpreted the deadline at issue here, and the Plaintiffs do not argue before us that the deadline is entirely waivable by them. Really, the dissent creates this waiver argument on its own, which of course we should not do. *See Greenlaw v. United States*, 554 U.S. 237, 243 (2008) (explaining the "principle of party presentation," under which "we rely on the parties to frame the issues for decision and assign to

Overall, we are puzzled that the district court enjoined Defendants strictly to comply with Congress's 180-day deadline on the one hand, while also providing that, if a "SIJ petitioner requests additional time to respond to [a] request/notice [from USCIS for additional evidence in support of a petition]," the petitioner can "thereby toll[] the time in which USCIS must adjudicate the petition," seemingly without a limit to the time tolled by the Petitioner, on the other hand. The record before us does not support the reasonableness of the district court's decision broadly to permit Plaintiffs, and each class member they represent, to toll the timeline set by

_____

courts the role of neutral arbiter of matters the parties present"). Perhaps Plaintiffs' attorneys omitted this argument simply because they did not think of it. More likely, Plaintiffs' attorneys—who "know a great deal more about [this] case[] than we do," *id.* (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (R. Arnold, J., concurring in denial of reh'g en banc))—probably declined to assert this argument out of concern for its natural consequences. It is well-established that a time limitation may be waived "either expressly or by conduct inconsistent with an intention to rely upon it," *Oelbermann v. Toyo Kisen Kabushiki Kaisha*, 3 F.2d 5, 5 (9th Cir. 1925), as with the statute-of-limitations example posited by the dissent. Dissent at 7. Indeed, *Shutte* explains that a beneficiary of statutory provisions "will be held to have waived them if he refrained . . . from making objections that provisions intended for his benefit were not complied with." 82 U.S. at 152–53. In the very sentence after the one quoted by the dissent, the Court held that the petitioner *unintentionally* "waive[d] his rights under the Act of Congress" because he "refrained from making objections known to him." *Id.* at 159.

Plaintiffs' attorneys may have refrained from making the dissent's waiver argument for a good reason. They may have balked at exposing their clients to the possibility of waiving their right to hold USCIS strictly to the 180-day deadline by failing to object in a timely manner. Consistent with the party presentation principle, we should not take the liberty of *sua sponte* creating this pitfall.

27

Congress, indefinitely, without an affirmative showing of good cause specific to each petitioner's circumstances.

We therefore hold that the district court abused its discretion because the record does not support the reasonableness of the district court's order that broadly permits each and every SIJ petitioner to "toll" indefinitely Congress's timeline for adjudicating SIJ petitions, without apparent consideration of existing regulations, without an affirmative showing of good cause specific to each class member's claim for tolling, when the district court held USCIS strictly accountable to the statutory deadline, and where 8 U.S.C. § 1232(d)(2) plainly provides no mechanism for "tolling." On remand, the district court may consider amending its injunction to allow tolling on a case-by-case basis, upon an affirmative showing of good cause, subject to a definite limitation on the tolling duration. *See Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 882 (9th Cir. 2022) (remanding to the district court with instructions to amend an injunction). We leave it to the district court's discretion as to whether it desires to take on the administrative burdens associated with such an injunction.

## V.

For the reasons stated above, we **AFFIRM** the district court's issuance of injunctive relief; we **VACATE** only the provision of the district court's permanent injunction that permits SIJ petitioners (but not the Government) to "toll" Congress's

deadline for adjudicating SIJ petitions; and we **REMAND** to the district court to make any further, proper modifications to its order consistent with this disposition. We encourage the parties on remand to present the district court with more practical terms for an injunction that considers Congress's plain directive and the parties' respective interests.

Moreno Galvez v. Jaddou, No.: 20-36052

GRABER, Circuit Judge, dissenting in part:

With one exception, I concur in the majority's opinion. In my view, the district court did not abuse its discretion in any way. Accordingly, I would simply affirm.

Congress enacted the "Special Immigrant Juveniles" ("SIJ") program to assist a limited group of abused, neglected, or abandoned non-citizen children. 8 U.S.C. § 1101(a)(27)(J). For these children, the stakes are high. If admitted to the program, a child may be sheltered from removal, obtain a federally-funded education, and qualify for preferential status in receiving employment-based green cards. Id. §§1153(b), 1232(d)(4)(A), 1522(d). But a child whose application remains pending receives none of those benefits. Instead, the child faces detention and removal. Thus, for these children, waiting for action on the application can be excruciating; among other harms, the children suffer from stress, fear, and depression.

The law forbids the federal government from taking too long to adjudicate these applications. Specifically, the relevant statute provides that each application "shall be adjudicated by the Secretary of Homeland Security not later than 180 days after the date on which the application is filed." 8 U.S.C. § 1232(d)(2).

But the United States Citizenship and Immigration Services ("USCIS") repeatedly has failed to meet the deadline. When Plaintiffs filed this action, USCIS

had a backlog of 32,518 SIJ applications, with about two-thirds of them (23,589 to be precise) pending for longer than the permitted 180 days. Plaintiff Moreno Galvez's application, for example, had been pending for almost two years—nearly four times the number of days allowed. In short, as a matter of practice, USCIS failed to comply with the 180-day statutory deadline.

USCIS insisted that this delay was permissible. USCIS argued to the district court that it had the authority to label an application "incomplete" and to seek additional information from the applicant—even if the application was, in fact, complete. As a practical matter, this reasoning may have led to the backlog: it enabled USCIS to evade triggering the 180-day clock by not classifying applications as "filed."

Not surprisingly, the district court rejected USCIS's argument: "[t]he agency interprets the statute in such a way that the 180-day period is nothing more than a target adjudication date that can be delayed, repeatedly and for extended periods of time, at the whim of the agency." The district court concluded that USCIS "unlawfully withheld or unreasonably delayed" adjudication of the children's applications in violation of the Administrative Procedure Act ("APA") and entered summary judgment in favor of Plaintiffs. USCIS does not challenge that conclusion.

Plaintiffs sought permanent injunctive relief. More specifically, Plaintiffs sought an order requiring USCIS "to comply with the statutory deadline for the

adjudication of SIJ applications." After applying the appropriate factors, the district court agreed with Plaintiffs and issued a permanent injunction. In particular, the district court: (1) required USCIS to adjudicate SIJ petitions within 180 days of each petition's filing; (2) explicitly forbade the claims-processing gimmicks that USCIS had argued it could use to dodge the 180-day deadline; and (3) allowed for the extension of the 180-day deadline in only one circumstance: if the beneficiary of the deadline—the child—asks for more time.

On appeal, USCIS raises several arguments that challenge the injunction. The majority opinion correctly rejects most of those arguments, Maj. Op. at 1–21, and I join that analysis in full.

But the majority opinion agrees with USCIS on one point: that the third provision described above is unreasonable. Maj. Op. at 21–29. I emphatically disagree. In my view, the district court did not abuse its discretion when it allowed the beneficiary of a deadline the opportunity to request additional time. Accordingly, I respectfully dissent from section IV.B.2.

We have repeatedly held that the scope of an injunction is reviewed for abuse of discretion. United States v. Washington, 853 F.3d 946, 962 (9th Cir. 2017). "Abuse-of-discretion review is highly deferential to the district court." Microsoft Corp. v. Motorola, Inc., 696 F.3d 872, 881 (9th Cir. 2012). Under that standard, we cannot reverse the district court unless we have a definite and firm conviction that

3

the district court committed a clear error of judgment in the conclusion that it reached after weighing the relevant factors.  See Harman v. Apfel, 211 F.3d 1172, 1175 (9th Cir. 2000) (noting that reversal under abuse of discretion standard is possible "only when the appellate court is convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances").  If the district court's determination "falls within a broad range of permissible conclusions," we must affirm.  Kode v. Carlson, 596 F.3d 608, 612 (9th Cir. 2010) (per curiam).

The majority opinion suggests that the injunction is contrary to law.  Maj. Op. at 25–26.  To be sure, an error of law constitutes an abuse of discretion.  Applied Med. Distrib. Corp. v. Surgical Co. BV, 587 F.3d 909, 913 (9th Cir. 2009).  But the injunction violates no law.  The majority opinion grounds its suggestion in the statute's mandatory text—"shall be adjudicated . . . not later than 180 days" after the filing of an SIJ application.  This text, according to the majority opinion, leaves no room for an exception.  If USCIS must comply with the applicable deadline, so too must the applicants.  I disagree.

First, although the relevant subsection, 8 U.S.C. § 1232(d)(2), is written in the passive voice, in the context of the whole statute it appears to be an instruction to USCIS concerning how and when it must perform its duties.  For example, § 1232(a)(1) provides:

> In order to enhance the efforts of the United States to prevent trafficking in persons, the Secretary of Homeland Security . . . shall

4

develop policies and procedures to ensure that unaccompanied alien children in the United States are safely repatriated . . . .

Similarly, § 1232(a)(2)(A), (a)(5)(B), and (e) require USCIS to perform particular tasks. See also William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 (2008) (listing the provision among other government responsibilities in a section titled "Subtitle D-Activities of the United States Government").

Second, the purpose of § 1232 generally is to enhance efforts to combat trafficking of children and to protect abused, neglected, and abandoned children. See, e.g., Flores v. Sessions, 862 F.3d 863, 880 (9th Cir. 2017) ("The overarching purpose of the [Homeland Security Act] and [the Trafficking Victims Protection Reauthorization Act] was quite clearly to give unaccompanied minors more protection, not less."); Perez v. Cuccinelli, 949 F.3d 865, 878 (4th Cir. 2020) (en banc) ("The subsequent amendments to the SIJ provision have included revisions . . . aimed at enhancing efforts to combat the trafficking of children, particularly unaccompanied immigrant minors."); D.B. v. Cardall, 826 F.3d 721, 738 (4th Cir. 2016) ("The intricate web of statutory provisions relating to [unaccompanied alien children] reflects Congress's unmistakable desire to protect that vulnerable group."); Yeboah v. U.S. Dept. of Just., 345 F.3d 216, 221 (3d Cir. 2003) (recognizing that Congress established SIJ status "to protect abused, neglected, or abandoned children who, with their families, illegally entered the

United States"); H.R. Rep. No. 105-405, Sec. 113 (1997) (Conf. Rep.); 143 Cong. Rec. H10844 (daily ed. Nov. 13, 1997) (observing that Congress modified the statutory text "in order to limit the beneficiaries . . . to those juveniles for whom it was created, namely abandoned, neglected, or abused children").

Specifically, Congress enacted the 180-day deadline for the benefit of the applicant. See, e.g., Garcia v. Holder, 659 F.3d 1261, 1271 (9th Cir. 2011) ("That Congress has subsequently mandated expeditious adjudication of [SIJ] applications may be viewed as a clarification by Congress that it does in fact desire extra protection for [SIJ]-eligible minors."). Thus, if an applicant agrees to waive the deadline, nothing in the statute requires a different result. See Shutte v. Thompson, 82 U.S. (15 Wall.) 151, 159 (1872) ("A party may waive any provision, either of a contract or of a statute, intended for his benefit."); Comm'r v. Hind, 52 F.2d 1075, 1076 (9th Cir. 1931) ("A party may always waive a right in his favor, created by statute, the same as any other." (internal quotation marks omitted)). Accordingly, the majority opinion's citation of cases pertaining to statutory interpretation, Maj. Op. at 26 n.11, is beside the point. The text of the statute is clear, but so is the substantive principle that a party may waive a statutory right that the legislature has given to that party—here, the SIJ applicant's right to receive an adjudication within 180 days. This is a straightforward application of the principle of waiver, with which we are perhaps most familiar in the context of a statute of limitations. For example,

6

a defendant can answer a late-filed complaint on the merits, without raising a statute-of-limitations defense, thus waiving the statutory benefit that the legislature has bestowed on defendants. This situation does not require a showing of good cause, as the majority opinion rules. Maj. Op. at 28.[1]

Here, as the majority opinion rules, the district court properly concluded that USCIS "unreasonably delayed" the adjudication of SIJ applications in violation of the APA. That delay, the district court also found, caused several irreparable harms to Plaintiffs. But the district court recognized that those same harms also could result from overly formalistic adherence to the 180-day rule. Rather than issue a blanket rule that would continue to cause harm in some limited circumstances, the district court allowed for some possibility of delay. Cf. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 248 (1944) (recognizing the need for "flexibility" in an "equitable procedure" so that courts may "meet new situations which demand

---

[1] I am mystified by the majority opinion's footnote 11. The only issue under discussion here is whether the district court abused its discretion by allowing SIJ applicants to waive the agency's 180-day deadline—an issue that the parties have framed clearly. Indeed, the majority reaches this issue precisely because the parties have presented it to us; we differ only on the question whether applicants must show "good cause" to waive the deadline or may waive the deadline upon request. The "principle of party presentation" does not limit our thinking on that question. Footnote 11 suggests that Plaintiffs did not draw an analogy to statute-of-limitation precedents because they somehow may have waived the right to insist that USCIS adjudicate their cases within 180 days. But their objection to USCIS's failure to do so is the gravamen of this entire action. And, were we to uphold the injunction as the district court crafted it, which is what I advocate, there would be no "pitfall."

7

equitable intervention, and to accord all the relief necessary to correct the particular injustices involved in these situations").  This modest flexibility, on its own, does not constitute an abuse of discretion.

The majority opinion accurately points out that the district court's injunction has the effect of superseding not only the statutory deadline, but also many of the agency's regulations pertaining to requests for additional information.  The majority opinion asserts that the injunction "conflicts" with two regulations in particular:  8 C.F.R. § 103.2(b)(8)(iv) and 8 C.F.R. § 103.2(b)(13)(i).  The first regulation provides that "[a]dditional time to respond to a request for evidence or notice of intent to deny may not be granted."  8 C.F.R. § 103.2(b)(8)(iv).  And the second regulation provides that the agency may "summarily den[y]" as "abandoned" any application that does not comply with the agency's chosen deadline for responding to requests for additional information.  Id. § 103.2(b)(13)(i).

The district court's order enjoins enforcement of those regulations:  tolling is not permitted "unless the SIJ petitioner requests additional time to respond to the request/notice and thereby tolls the time in which USCIS must adjudicate the petition."  Under the district court's injunction, and contrary to 8 C.F.R. § 103.2(b)(8)(iv), SIJ applicants may receive additional time to respond, thereby tolling the statutory deadline. The fact that the district court's order "conflicts" with the regulations is an ordinary consequence of the injunctive relief in this case.

Indeed, as the majority opinion acknowledges, the district court's injunction conflicts with many other regulatory provisions as well, such as the provision that would allow the agency itself to toll the statutory deadline merely by filing, on its own prerogative, requests for additional information. 8 C.F.R. § 103.2(b)(10)(i).

Finally, the majority opinion faults the district court for allowing, in theory, an SIJ applicant to toll the deadline for an "unlimited amount of time." Maj. Op. at 22. The government has not made this argument, and for good reason: In the context of this case, the argument is both peculiar and unpersuasive. The problem underlying this action is USCIS's failure to act quickly enough. Plaintiffs gain nothing by having an application pending for a long period of time, and the record contains no evidence that any applicant would benefit from undue delay. To the contrary, Plaintiffs sought judicial relief because of the agency's own undue delay. Nor is USCIS prejudiced by waiting longer (as it does now) to adjudicate a petition. Whatever theoretical problems might arise in other contexts from allowing an applicant to toll a deadline indefinitely, there is no realistic possibility of harm here. The majority opinion recognizes that any SIJ applicant is entitled to toll the 180-day statute of limitations for good cause. Maj. Op. at 28. But we review the injunction only for an abuse of discretion. The majority opinion fails to explain why, considering the whole context of this case, the district court's inclusion of a

provision that any applicant is entitled to toll the 180 days simply upon request constitutes an abuse of discretion.

In sum, because the district court acted well within its discretion in issuing the injunction in this case, I respectfully dissent from section IV.B.2.